CO-OPERATIVE VINEYARDS CO. v. FT. STOCKTON IRRIGATED LANDS CO.

(Court of Civil Appeals of Texas. El Paso. June 12, 1913. Rehearing Denied June 26, 1913.)

1. EMINENT DOMAIN (§ 10*)—POWER—IRRIGATION CORPORATION.

An irrigation company has the power of eminent domain, and may exercise the privileges of public service corporations with respect to irrigation projects, whether incorporated under the direct provisions of Rev. St. 1895, art. 704, subd. 6, or under art. 642, subd. 23, authorizing the creation of private corporations for irrigation purposes, etc.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 35–48; Dec. Dig. § 10.*]

2. EMINENT DOMAIN (§ 10*) — IRRIGATION COMPANIES.

An irrigation company which has not taken water from streams in which the public has any interest, but only distributes water arising from lands owned exclusively by it which do not touch the lands of others except persons holding under it, cannot exercise the privileges of public service corporations with respect to irrigation projects, including the power of eminent domain.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 35–48; Dec. Dig. § 10.*]

3. WATERS AND WATER COURSES (§ 288*)—IRRIGATION—DAMAGE—LIABILITY.

The fact that a corporation is exercising the powers of a public service irrigation corporation is immaterial upon its liability for damage to land or crops by negligent seepage or flooding of water from its streams.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 288.*]

4. DEEDS (§ 170*)—RESTRICTIONS.

A grantor may incorporate such restrictions in his deed to the land as are not against public policy.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 450, 535, 536; Dec. Dig. § 170.*]

5. WATERS AND WATER COURSES (§ 288*)—RESTRICTIONS—INJURIES TO LAND CONVEYED—VALIDITY OF RELEASE.

Where a deed provided that vendee waived all claims which might accrue for damage by reason of seepage or overflow from vendor's irrigation canals, vendor would not be liable for damages caused from such source in the absence of gross or willful negligence by him causing damage to the land.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 288.*]

Appeal from District Court, Pecos County; W. C. Douglas, Judge.

Action by the Co-operative Vineyard Company against the Ft. Stockton Irrigated Lands Company. From a judgment for defendant, plaintiff appeals. Affirmed.

R. D. Wright, of Ft. Stockton, and W. W. Johnson and Geo. M. Shelton, both of Hamlin, for appellant. Howell Johnson, of Ft. Stockton, Harkless & Histed, of Kansas City, Mo., and J. F. Woodson, of El Paso, for appellee.

HARPER, C. J. This suit was brought by the Co-operative Vineyards Company against the Ft. Stockton Irrigated Lands Company to recover damages for injuries to its 300-acre vineyard occasioned by seepage and overflow from defendant's irrigation canal.

Plaintiff alleged: That the defendant is a private corporation, duly incorporated under the laws of Texas, and also an irrigation public service corporation, with powers of eminent domain, engaged in carrying water through its ditches from Comanche creek for distribution upon different lands, including the 300-acre tract described, which plaintiff alleges it owns, together with a perpetual water right privilege as a part of the land. That Pecos county is in the arid portion of the state where rainfall is insufficient for agriculture, necessitating irrigation. That the defendant constructed ditches and laterals upon its (defendant's) property, and conducted water through same for the purpose of irrigating its lands, as well as the lands of plaintiff, and that the water in said ditches was at all times in the control of the defendants. That in 1910 defendant turned into said ditch such an amount of water that the plaintiff's premises were flooded by seepage and overflow, and that said premises continued to be flooded, with no means of drainage, until they became wet, marshy, and the alkalies appeared upon the surface, and destroyed and seriously injured plaintiff's vineyard growing thereon. Defendant answered that plaintiff's lands were originally owned by defendant, and that upon the sale of said lands the purchaser entered into the following contract: "And said party of the second part (vendee) for himself, his heirs and assigns, also hereby waives any and all claim or claims which might hereafter arise or accrue to him or them for loss or damages by reason of seepage, leakage, breakage or overflow, from said canals, flumes, or laterals belonging to said party of the first part." That said agreement was a part of the consideration for the sale of the said land by defendant. That none of the canals or ditches touched any of the lands of the public, but all were upon the lands of defendant company. That it had never appropriated any of the lands of the public, but gets its water from its own lands from springs thereon. Further denied that it is an irrigation public service corporation, but alleges it is a private corporation, not authorized to exercise the power of eminent domain, not using any public waters and irrigating no lands except its own, or that sold under the contract plead.

The trial court found the facts to be:

"(1) That on May 6, 1910, defendant sold to W. S. Whaley the land in controversy and evidenced said sale by deed which contained the following covenants, viz.: '(1) The party of the first part, its successors and assigns, is to furnish and deliver water through its canals. * * * (2) The water to be used for irrigation and domestic purposes only. * * *' (3) Relates to delivery, withdraw-

ing and regulating supply. '(4) The party of the second part agrees to take and use * * * and pay for * * * water and maintain its ditches. * * * (5) It is stipulated that * * * if for any cause beyond the control of the party of first part, the full amount of water cannot be furnished, * * * party of first part shall not be liable therefor. * * * (6) The said party of the second part for * * * self * * * heirs or assigns, in consideration of the agreements herein entered into on the part of the said party of the first part, hereby grants a right of way free of charge across the land herein described, for the necessary canals and laterals and waste water ditches of the party of the first part, said first party, its successors or assigns, to at all times have entire charge and control of such canals and laterals and all water carried through them, and said party of the second part, for himself, his heirs and assigns, also hereby waives any and all claim or claims, which might hereafter arise or accrue to him, or them for loss or damage by reason of seepage, leakage, breakage, or overflow from said canals, flumes or laterals belonging to said party of the first part, either upon the lands hereinbefore described, or any other tract or tracts of land, owned by said party of the second part, anything in state statutes, law, or custom to the contrary notwithstanding.'

"(2) June 7, 1910, Whaley executed written assignment of said contract to the Ft. Stockton Irrigation Vineyards Company, and said company, in turn, assigned to the plaintiff herein.

"(3) December 21, 1912, said Irrigated Vineyards Company and stockholders assigned all causes of action to the plaintiff."

(4) (Relates to improvements of premises.)

"(6) The High Line ditch extends from Comanche creek some five or six miles to plaintiff's premises, and is one of the main ditches used by defendant in distributing water to the different lands under its irrigation system, and was constructed prior to the making of the original contract with Whaley, and along where the ditch parallels plaintiff's premises for a distance of about 400 yards, by reason of the condition of this ditch, a large quantity of water has continually escaped (by seepage and overflow) from the ditch, a great portion of which has kept portions of plaintiff's land saturated with water, and has caused the water plane to rise and alkali to appear; that this condition of the ditch was local to the place near plaintiff's premises.

"(7) The court finds that the defendant was guilty of negligence in the maintenance of its said ditches from the summer of 1910 to the time of the filing of this suit.

"(8) The court finds that the negligence of the defendant was the proximate cause of the plaintiff's injuries, and that the injuries first manifested themselves in the spring of 1911, and since that time have increased until the time of the filing of this suit.

"(9) The court finds that the plaintiff was not guilty of contributory negligence.

"(10) The name of this corporation is 'Ft. Stockton Irrigated Lands Company.'

" '(2) The purpose for which this corporation is formed is as follows: The construction, maintenance and operation of dams, reservoirs, lakes, wells, canals, flumes, laterals and other necessary appurtenances for the purpose of irrigation, navigation, milling, mining, stock raising and city waterworks, and to hold, purchase, sell, mortgage or otherwise convey such real and personal estate as the purposes of the corporation shall require.'

"(11) The defendant, in 1909, purchased a tract of land comprising about 52,000 acres located in Pecos county, Texas. There is located on this land a large spring producing a stream called Comanche creek, which originates within the tract. The water furnished by these springs is sufficient to irrigate about 10,000 acres of land. Comanche creek rises wholly within the tract of 52,000 acres, and the water never leaves the same. Shortly after the purchase of this land, the defendant, at an enormous expense, dug its main canals about seven miles in length, and also incidental canals, laterals, etc., through a portion of this tract of land; laid out roads, rights of way for canals and ditches, and platted and laid out about 7,000 acres of the land into blocks of denominations of 10 acres each, furnished a suite of offices in Ft. Stockton, Tex., provided two automobiles kept in constant use in showing its land to home-seekers, published literature advertising the advantages and productiveness of the soil on their said tract of land, with the water covenant thereto for irrigation, and advertised for sale a large portion of said tract as subdivided into such tracts as purchasers would choose to buy. These lands were advertised extensively throughout the country, both in Texas and in other states.

"Defendants sold to about 75 purchasers tracts of said land under said irrigation system; said sales all being made under contracts, copies of which were introduced in evidence in this cause by the plaintiff, and said contract, both for the purchase of the land and perpetual water right, are alike in form, and contain the same provisions as the ones under which plaintiff holds title to the land and water covenant. These contracts were made at different times since about the first of the year, 1910, until this time, and a great number of the purchasers erected homes and improved their land and have been cultivating same, raising different crops, planting fruit trees and practically all the purchasers have improved their tracts, and have been using the water under this irrigation system, paying the maintenance fee for keeping up their ditches, and defend-

ant has been delivering the water which the purchasers acquired under their deeds, through its canals, as provided in the deed to the perpetual water right. Ever since the construction of the ditch defendant has been engaged in an effort to sell more of the unsold portions of the land under their irrigation system.

"Defendant has never appropriated any public water, and has never exercised the right of eminent domain, unless it should be held that the purchasing of the 52,000 acres of land with the water thereon would be held to be an appropriation when applied to irrigation by defendant, as shown by the facts in this case.

"Before the irrigation system was put in about the year 1909, this land was not worth more than about $10 per acre, but after having been put under the system of irrigation was worth, with the perpetual water right under said contract, about $100 per acre. In other words, the land is worth only about 10 per cent. without the perpetual water right referred to of what it is worth with the perpetual water right. The court further finds that the defendant never sells any of its water, except to parties who buy its lands, and then only as a part of the land sale contract. The contract in question for the sale of the lands and perpetual water right was voluntarily and for a valuable consideration entered into. None of the defendant's ditches or canals cross any public lands or property nor lands of any other party, but pass over and along lands exclusively owned by this defendant. That it gets its water from no public waters or sources; that there are no riparian owners, other than the defendant itself who have any right, natural or artificial. Pecos county is in the arid portion of the state where rainfall is only about 12 inches per year and insufficient; and irrigation is necessary and beneficial for agriculture.

"(12) The court finds that the said premises of the plaintiff are seriously and permanently injured from negligence in permitting seepage and overflow during the past two years, by reason of which the plaintiff has suffered substantial damages, and the court expressly finds that the evidence furnishes a sufficient basis for estimating the extent and amount of the said damages; but the court refuses to find the extent and amount thereof, and the only reason why the court so refuses to find on the amount of the damages suffered during the past two years is for the reason that the court has concluded as a matter of law, which appears in its conclusions of law, that the injuries and damages are expressly provided against in the contract of purchase, and cannot be recovered by reason of that provision in the contract. .

"(13) The court finds that the plaintiff is not delinquent in the payment of any of the purchase money installments, or the main-tenance fee, provided in the contract, and that there has never been any default."

There is no statement of facts in the record, so the findings of fact of the trial court must be adopted by this court.

The appellant in its five assignments of error suggest only one question for the consideration of this court, viz.: Is the waiver contained in the deed and contract above quoted, " * * * party of second part * * * waives any and all claims which might accrue to him * * * by reason of seepage, * * * overflow, from said canals, * * *" a valid and binding covenant to the extent that it bars a recovery by plaintiff, as a matter of law?

[1, 2] The defendant has the power of eminent domain, and is authorized to exercise the privileges of public service corporations in the matter of irrigation projects, whether incorporated under subdivision 6, art. 704, Revised Civil Statutes of 1895, or under subdivision 23, art. 642, Revised Civil Statutes (Cotulla v. La Salle Water Storage Co., 153 S. W. 711), but under the findings of fact it has not undertaken to do so, nor is it in a position to do so since it does not take any water from streams in which the public has any interest, but, on the other hand, only distributes water which rises on lands owned exclusively by it and in flowing do not touch the lands of any person except those holding under defendant.

[3] However, we fail to see how the fact that a corporation may be exercising the powers of a public service irrigation corporation has any bearing on the question of injuries to lands or crops occasioned by negligent seepage or flooding thereof. If the defendant was exercising the powers and privileges of a public service irrigation corporation, and this action was for damages for failure to furnish water to lands entitled to it, we would have a different question to deal with.

[4] The right of an owner of land upon sale thereof to put such restrictions in his deed as shall not be against public policy is unquestioned in this state. Jeffery v. Graham, 61 Tex. 481; Granger v. Kishi, 139 S. W. 1002; Moore-Cortes Canal Co. v. Gyle, 36 Tex. Civ. App. 442, 82 S. W. 350.

[5] The deed under which plaintiff deraigns title is the charter of his rights, and defendant's liability to it must be measured by its terms. Appellee could sell its land or not, as it pleased, and upon such conditions as it saw fit, and appellant in accepting the title with the covenant in the deed from appellee "that the vendee waives any and all claims which might hereafter accrue for loss or damage by reason of seepage, leakage or breakage, or overflow from said canals, flumes or laterals of the vendor," could not acquire a possessory right in the land inconsistent therewith; and, there being no claim that appellee was guilty of any gross or will-

ful negligence, there could be no liability for damages occasioned in the manner alleged by appellant.

The judgment of the trial court is therefore affirmed.