### W. S. CURLEE ET AL. v. M. D. WALKER ET AL.

#### No. 3465.  Decided October 4, 1922.

(244 S. W., 497.)

1.—Real Property—Restrictions on Building—Right of Contract.

Parties having a right to contract with reference to property as they see fit provided they do not contravene public policy and their contracts are not otherwise illegal, they may, in the purchase and sale of real property create restrictions regulating the right of the purchasers to build thereon. (p. 43).

2.—Same—Rights of Purchasers.

Where by the deeds of purchase and sale of lots there is created a residence district subject to restrictions on the right of building by the purchasers during a term of years dating from their respective purchases and set forth in their respective deeds, such restrictions form a part of the consideration upon which each purchaser holds his lots; the buyer accepting such burden because a like restriction is imposed on his neighbor's ownership and is to his advantage, he has an interest in the observance of such restriction by the others which he can enforce by law, though not otherwise a party to the deed under which such neighbor holds. (pp. 43, 44).

3.—Same—Mutuality.

Where the purchasers in a restricted residence district bought their lots at different dates, each with restrictions applying for ten years only from the date of his purchase, these restrictions (against building more than one residence on any two lots) were effective against each lot owner having notice of them for ten years from the date of such purchase, and could be .enforced by injunction at suit of other lot owners within the district. The obligation did not cease to be mutual because the term of ten years operating against the earlier purchasers had expired and he was no longer subject to the restrictions; each was bound by them according to the terms of his own contract, and not released therefrom by the expiration of the ten years from the date of purchase by others. (p. 45.)

Question certified from the Court of Civil Appeals for the Second District, in an appeal from Wichita County.

*Bonner & Bonner* and *W. H. Sanford,* for appellants.

On the right of plaintiffs to maintain this suit: Pomeroy's Equity Jurisprudence, pars. 1693-1696, 2 Devlin on Deeds, p. 1862 and footnotes.

The condition in the deeds is plain and unambiguous: Wakefield v. Van Tassel, 95 Am. St., 207, and monographic note; Pomeroy's Equity, (4 Ed.), par. 1703; 18 Corpus Juris, pp. 386, 394; Anderson v. Rowland, 18 Texas Civ. App., 460.

In argument in the Supreme Court counsel further cited: Allen v. Barrett, 213 Mass., 36, Ann. Cas. 1913-E, 820; Allen v. Detroit, 167 Mich., 464, 133 N. W.. 317, 36 L. R. A., (N. S.) 890; American Unitarian Ass'n v. Minot, 185 Mass., 589, 71 N. E. 551; Ball v. Milliken, 31 R. I., 36, 76 Atl., 789, 37 L. R. A. (N. S.) 623; Beck v. Hickman, 118 N. W., 510; Booth v. Knipe, 225 N Y. 390, 122 N. E. 202; Bowen v. Smith, 76 N. J. Eq., 456, 74 Atl., 675; Coates v. Cullingford, 147 App. Div. 39, 131 N. Y. Supp., 700; Co-op. Vineyard Co. v. Ft. Stockton Irr. Lds. Co., 158 S. W., 1191; 13 C. J. 334; 18 C. J. 388, 395; Duester v. Alvin, 145 Pac., 660, 74 Ore., 544; 4 Elliott on Contracts, page 1095; Fete v. Foerstel, 139 S. W., 820;; Flynn v. New York, etc., Ry. Co., 218 N. Y., 140, Ann. Cas. 1918-B, 588; Goulding v. Phinney (Mass.), 125 N. E., 703; Granger v Kishi, 139 S. W., 1002; Harrison v. Boring, 44 Texas, 255; 2 High, Inj. 1158; Hooper v. Lottman, 171 S. W., 270; Hopkins v. Smith, 162 Mass., 444; Jackson v. Stephenson, 156 Mass., 496, 31 N. E., 691; Jeffry v. Graham, 61 Texas, 481; Krutz v. Potter, 44 App. Div., 262, 60 N. Y. Supp., 764; Lowrence v. Woods, 118 S. W., 551; Miles v. Hollingsworth (Cal.) 187 Pac., 167; Morrow v. Hassellman, 69' N. J. Eq., 612, 61 Atl., 369; 167 N. Y., 586, 60 N. E., 1114; Pomeroy Eq. Juris. (4 Ed.) p. 1703; 6 R. C. L. p. 687; St. Louis Union Trust Co. v. Merritt, 158 Mo. App., 648, 139 S. W., 824; Sayles v. Halls, 210 Mass. 281, Ann. Cas., 1912-D, 475; Sprague v. Kimball, 213 Mass., 380, Ann. Cas. 1914A, 431; Wakefield v. Van Tassel, 95 Am. St. Rep., 207, 66 N. E., 830; Welch v. Austin, 187 Mass., 256, 72 N. E., 972; Wilson Company v. Gordon, 224 S. W., 703; Wolf v. Brass, 12 S. W., 159; Wright v. Pfirmmer, 99 Neb., 447, L. R. A., 1917-A 323.

*Weeks, Morrow, Francis & King,* for appellees.

No one can take advantage of a breach of a condition subsequent but the grantor and his heirs. Devlin on Deeds, (3 Ed.), sec. 969.

To constitute an exception to this rule there must be a mutuality of rights. 18 Corpus Juris, p. 394; Coates v. Cullingford, 131 N. Y. Supp., 701; McDougall v. Schneider, 118 N. Y., Supp., 861; Hooper v. Lottman, 171 S. W., 272; Russell Realty Co. v. Hall, 233 S. W., 996; Tiffany on Real Estate (2 Ed.), ch. 15, p. 1425, sec. 400, p. 1455, sec. 401.

MR. JUSTICE PIERSON delivered the opinion of the court.

The following facts taken from the certificate of the Honorable Court of Civil Appeals for the Second District will be sufficient for a proper understanding of the case before us:

On May 3, 1909, the Floral Heights Realty Company, a private corporation, laid out, platted and designated an addition to the city of Wichita Falls known as the "Floral Heights Addition," and filed its plat for record in the Deed Records of Wichita County. Thereafter, on February 2, 1910, it set apart some eighteen blocks in the addition as a restricted district. It had suitable resolutions prepared and spread upon its minutes, and the following stipulation inserted in all of its deeds to lots within this restricted area, to-wit:

"And the further consideration to which the grantee herein by the acceptance of this deed assents and agrees; that the lots hereby conveyed shall not within a period of ten years from this date be used for any other than residence purposes, that no residences shall be constructed on this property in excess of one residence to two whole lots as herein described; that no sale shall be made of the property hereby conveyed, of less than two whole lots, and that no residence shall be built on the lots hereby conveyed that cost less than $3,000 and this conveyance is made upon the condition that the grantee and his vendees shall comply with the foregoing requirements, and that if the vendee or any future owner of all or any part of the property hereby conveyed shall fail to observe said conditions that all or so much of the property hereby conveyed as shall belong to any owner guilty of such breach shall at once revert to and the title thereof be revested in the grantor herein or its successors or assigns, provided, however, that the building of a servant house to be used only by servants of the owner of the lots shall not be considered as a breach of the conditions hereof."

This general scheme or plan of creating a restricted residence district was adopted because it was thought that such building restrictions would make the property more attractive and valuable to purchasers, and it was contemplated that all the lots in the restricted area would be sold within two or three months. Within the following two or three months, more than one-third of the lots contained in the restricted area were sold, and all the deeds contained the above set out building restriction clauses. Thereafter practically all the lots in the restricted area were sold to different purchasers, and on different dates, extending down to January, 1919, at which time the Floral Heights Realty Company was dissolved and its charter surrendered.

W. S. Curlee and eight others who a short time prior thereto and at different dates had purchased lots in the restricted district, instituted this suit against Mark D. Walker and the Walker Building & Loan Company, who had bought two of the lots about one year

prior to the institution of the suit, to restrain them from building a second house on their two lots, one house having already been built thereon by them. The appellants alleged in their petition the creation of the restricted district under the "general scheme and plan" above set out, and the proof showed that the "general scheme and plan" was well known to the appellees and that the deed to them contained the same stipulations as contained in all the other deeds. The trial judge granted a temporary injunction restraining the appellees from building the house complained of, but later, upon motion and answer of the appellees, dissolved the injunction and dismissed appellants' petition. Upon appeal from that judgment the Court of Civil Appeals affirmed the judgment of the District Court, upon the theory that after ten years from the first purchases of lots the restrictive plan as applied to the entire property became inoperative for want of uniformity and certainty as to duration, and therefore lacked mutuality; that after that period the restriction by its very terms would be inoperative against the first purchaser, and later purchasers as their period of limitation expired, and that the restriction would cease to be binding upon any. Upon motion for rehearing, the Court of Civil Appeals certifies to this court for answer the question whether or not the trial judge erred in dissolving the temporary writ of injunction.

The law recognizes the right of parties to contract with relation to property as they see fit, provided they do not contravene public policy and their contracts are not otherwise illegal. Co-operative Vineyards Co. v. Ft. Stockton Irr. Lands Co., 158 S. W., 1191; Hooper v. Lottman, 171 S. W., 270; Anderson v. Rowland, 18 Texas Civ. App., 460, 44 S. W., 911; Wolf v. Brass, 72 Texas, 133, 12 S. W., 159; Wilson Company v. Gordon, 224 S. W., 703; Lowrence v. Woods, 54 Texas Civ. App., 233, 118 S. W., 559, and authorities therein cited.

The correct rules that govern covenants of the character set out in the deeds to this restricted district are well stated by judge HIGGINS in the case of Hooper v. Lottman, 171 S. W., 270, as follows:

"The most familiar cases in which courts of equity have upheld the right of owners of land to enforce covenants to which they were not parties are those in which it has appeared that a general building scheme or plan for the development of a tract of land has been adopted, designed to make it more attractive for residential purposes by reason of certain restrictions to be imposed on each of the separate lots sold. This forms an inducement to each purchaser to buy, and it may be assumed that he pays an enhanced price for the property purchased. The agreement therefore enters into and becomes a part of the consideration. The buyer submits to a burden upon his own

land because of the fact that a like burden imposed on his neighbor's lot will be beneficial to both lots. The covenant or agreement between the original owner and each purchaser is therefore mutual. The equity in this particular class of action is dependent as much on the existence of the general scheme of improvement or development as on the covenant, and restrictions which contemplate a general building plan for the common benefit of purchasers of lots are recognized and enforced by courts of equity at the instance of the original grantor or subsequent purchasers. So the general rule may be safely stated to be that where there is a general plan or scheme adopted by the owner of a tract, for the development and improvement of the property by which it is divided into streets and lots, and which contemplates a restriction as to the uses to which lots may be put, or the character and location of improvements thereon, to be secured by a covenant embodying the restriction to be inserted in the deeds to purchasers, and it appears from the language of the deed itself, construed in the light of the surrounding circumstances, that such covenants are intended for the benefit of all the lands, and that each purchaser is to be subject thereto, and to have the benefit thereof, and such covenants are inserted in all the deeds for lots sold in pursuance of the plan, a purchaser and his assigns may enforce the covenant against any other purchaser, and his assigns, if he has bought with actual or constructive knowledge of the scheme, and the covenant was part of the subject-matter of his purchase.''

The facts of this case bring it within the scope of the general rules above quoted. They disclose that each purchaser of lots took with the restriction that for ten years *from the date of purchase* the purchaser would build only one house on two lots; and the vendor was obligated to place that limitation in each deed of purchase. This, together with the other provisions that the lots were to be used only for residence purposes, that no sale should be made of less than two whole lots, that no residence should cost less than $3,000, and the condition that the grantee and his vendees should comply with the stipulated requirements, made up and created the ''general scheme or plan'' under which all the lots in this restricted area were to be sold. This scheme or plan was advertised in the city of Wichita Falls, and each purchaser, and especially the parties to this suit, had knowledge of it and bought in contemplation thereof.

It is perfectly clear that it is lawful for districts with restrictions of this nature to be created, and also that each purchaser has the right to rely on and to enforce those restrictions. It was implied in each contract that every other contract should have these same provisions of restrictions, as they were for the benefit of all and at once formed an inducement to each purchaser. Thus was inaugurated a

"general scheme or plan" for creating this restricted residence district.

Finding nothing unlawful or violative of public policy in the general scheme or plan, it only remains for the court to construe and interpret the meaning of the plan and to give effect thereto.

To interpret the plan to mean that there should be created a restricted district for a period of ten years only, and that at the expiration of ten years from the *date of the first sale* the plan would cease to be effective for want of uniformity, would be to read into it a meaning contrary to the language used and not within the contemplation of the parties thereto.

Appellees insist that, because the period of restriction does not begin and end simultaneously for all the parties purchasers, therefore it is not uniform, and the "general scheme or plan" ceases to be effective at the end of the ten year period of the first purchaser. This does not follow by any means. Its uniformity consists in the fact that each purchaser is restricted to the building of one house on two lots for a period of ten years from the date of his purchase. This limitation or restriction applies uniformly to each purchaser, and for a uniform and equal period of time.

If the last purchaser builds only one house on two lots for the period of ten years, he does only what he obligated himself to do in his purchase.

If the various purchasers, down to the last one or the last few, have conformed to the plan and have observed their obligations, there surely could be no inequity for them to demand the observance by the last one of his obligation, or the last few of their obligations, according to the plan. Thus all would be observing the uniform obligation and reaping the uniform benefits of the plan.

We answer the question in the affirmative, that is, that the trial court erred in dissolving the temporary writ of injunction.