**BENBOW et ux. v. BONEY et al.**
**No. 2973.**

Court of Civil Appeals of Texas. Waco.
May 24, 1951.

Rehearing Denied June 7, 1951.

Jno. M. Barron, Bryan, for appellants.

Coulter Hoppess, Bryan, for appellees.

LESTER, Chief Justice.

The appellants, Mr. and Mrs. Evan Benbow, are the owners of Lot 1 in Block 1 of Cavitt's Woodland Heights Addition No. 2 to the City of Bryan, Texas. They were making preparations to erect a building

thereon to be used for commercial purposes, to-wit, a retail grocery store. Appellees W. A. Boney and Marion W. Slaughter filed their petition in the District Court of Brazos County in which they sought to permanently enjoin appellants from carrying said plans into execution. They base their suit upon a restrictive covenant imposed upon the lots in said addition in 1940. The covenant is as follows: "All lots in the tract shall be known and described as residential lots and no structure shall be erected, altered, placed or permitted to remain on any residential building plot other than one detached single family dwelling not to exceed two stories in height and a one, two or three car garage." These restrictions further provided that "they are to be construed as covenants running with the land and shall be binding on all parties claiming under them until 1965, when they shall be automatically extended for successive periods of ten years unless by a vote of the majority of the then owners of the lots they are changed in whole or in part." These covenants were executed on October 10, 1940, by Mr. Fred L. Cavitt and his three sisters, the then owners and developers of Cavitt's Woodland Heights Addition No. 2.

After a full hearing before the court without the aid of a jury, the court granted appellees a permanent injunction as prayed for and the appellants have appealed

During the trial it was stipulated that at the time suit was filed and at the time of the trial W. A. Boney was the owner of nine lots in Block 3 of Cavitt's Woodland Heights Addition No. 2 but did not reside in said addition, and that Marion W. Slaughter was the owner of one lot upon which he had his residence and resided therein. It was further stipulated that the restriction was of public record at the time of the purchase by both of the parties plaintiffs and defendants and they had knowledge of the same. The court, at the request of appellants, filed findings of fact and conclusions of law. Among some of the findings of fact are the following:

"(1) The restrictions were imposed on said Addition and certain lots in Cavitt's Woodland Heights Addition No. 1, Bryan, Brazos County, Texas, December 10, 1940. All of the lots in the restricted area were restricted to residential purposes except Lots 7, 8, 9, 10, 11 and 12, same being in Block 1 (Lot 12 being owned by Mrs. A. M. Waldrop, Sr.) which were set aside for commercial or business purposes. These lots front on Highway No. 6. The restricted area fronts on Highway No. 6, being a main artery of travel running through the City of Bryan in a southerly direction to the City of College Station, and also fronts on Coulter Drive, and all of said area is located within the city limits of Bryan, Texas.

"(2) When restrictions were imposed on this area in 1940, the population of Bryan was 11,840, and at the time of this trial the population was approximately 18,000.

"(3) The area where the two roads separate (one called College Avenue and the other Highway No. 6) is called the 'Y', and it is a few hundred feet north of the restricted area. Prior to 1940, there were only a few businesses in the 'Y' area, and these were near the junction of the two roads. After 1940, the business district, which had begun at the 'Y', grew and spread along both highways toward A & M College. The business district is now continuous on both sides of Highway 6 from the 'Y' to Coulter Drive, and is practically continuous on the West side of Highway 6 (across Highway 6 from restricted area) in a southerly direction beyond the restricted area. Said business district also includes the streets connecting the old and new highway and Cavitt Avenue in the vicinity of the northwest section of the restricted area. Many businesses and industries are located in the business district.

"(4) Defendants' lot is in the Northeast corner of Woodland Heights Addition No. 2 and fronts on Coulter Drive; near it and across Coulter Drive is the Bryan High School football field, erected since 1940. Along the north side of Coulter Drive are three businesses: plaintiff Boney's Super Market building and his

cafe building, both of which also front on Highway 6, said cafe being rented to plaintiff Slaughter, and an upholstering shop, four residences, and one or two vacant lots. There are no buildings of any kind fronting on the south side of Coulter Drive and located in the restricted area.

"(5) On account of the proximity of defendant's lot to business district it is not as desirable for residential purposes as other lots away from Coulter Drive in the residential district, and there has been no demand on the part of the public to purchase lots for residential purposes fronting on Coulter Drive.

"(6) No building of any kind in the restricted area in the immediate vicinity of defendant's lot has been erected, said lots being open and unimproved. Defendant's lot is about two-tenths of a mile from the nearest residence in the restricted area and about one-half of a mile from the plaintiffs' property in said area. There are many undeveloped and unimproved lots, between defendant's property and other residences in the restricted area.

"(7) The plaintiff, W. A. Boney, owns a portion of Block No. 3 of Cavitt's Woodland Heights Addition No. 2. The first property purchased by him fronted on Highway 6, and was near the residence of Dr. T. T. Walton.

"At the time of his purchase the plaintiff Boney endeavored to have the residential restrictions on his property released in order to erect a business house or houses, but for some reason the restrictions were not released. Since that time plaintiff W. A. Boney has conveyed to his son-in-law, plaintiff Marion W. Slaughter, a portion of the property and two residences have been erected on the eastern part of said Boney property in said restricted area.

"(8) The plaintiff W. A. Boney erected a large store building now operated as a super market by a tenant of W. A. Boney, and purchased the cafe building in which the plaintiff Marion W. Slaughter operates a cafe and directly across Coulter Drive from Cavitt's Woodland Heights Addition No. 2, and fronting Highway 6.

"(9) The plaintiff W. A. Boney opposed removal of restrictions on defendant's lot because:

"(a) Owners refused to release his property from the residential restrictions at a previous date.

"(b) To keep from having a business competitor.

"(10) The release of defendant's property from the restrictions would not injure the sale of other lots in the area for residential purposes, as long as some types of business were carried on on the premises, such as a dry-goods store or grocery store, but the operation of certain other types of business, such as a junk yard would injure the sale of lots in said restricted area for residential purposes.

"(11) Defendant desires a release of his lot from restrictions in order to erect and operate thereon a grocery store.

"(12) Purchasers of homes in said restricted area were induced, partly by the restrictions, to purchase lots and erect homes in the Addition. All of the property owners, both of undeveloped and developed property in said Addition, executed waiver of the restrictions on defendant's lot, save and except the plaintiffs and two other owners of residences, Dr. T. T. Walton and Walton Orr. Dr. Walton had previously advised them that he would be willing for the release if it was unanimous on the part of all the property owners in said restricted area.

"(13) The restrictions imposed on Cavitt's Woodland Heights Addition No. 2, and Lots A, M and N of Cavitt's Woodland Heights Addition No. 1, have never been violated to this date."

The appellants contend that the court erred in granting a permanent injunction because appellees failed to show themselves entitled in equity to such relief; that the evidence showing as a matter of law that the injunction would not benefit appellees' property in the addition and was not sought for that purpose, and that it would serve only to harass, hinder and oppress the appellants in their property rights without contributing to the purpose of the restrictive covenant or affecting the property of

appellees, and on account of changed conditions near the vicinity of the restricted district, the covenant should be removed from their lot.

■ The law recognizes the right of parties to contract with relation to property as they see fit, provided they do not contravene public policy and their contracts are not otherwise illegal. Covenants of this nature have been held to be legal and binding. Curlee v. Walker, 112 Tex. 40, 244 S.W. 497. It is clear that Mr. Cavitt and his sisters, the then owners of the land composing Woodland Heights Addition No. 2, had for their purpose the inauguration of a general scheme or plan for the creation and development of a residential district, with certain restrictions for the mutual benefit of themselves and all subsequent purchasers. Therefore the benefits created by reason of said restrictive covenant inured to each and every owner of said lots purchased thereafter with notice, actual or constructive, and each agreed to submit to and assume all burdens imposed by reason thereof. The Cavitts and all owners who have purchased their lots after the adoption of said scheme or plan are parties to the restrictions imposed and each is bound thereby, and the law recognizes the right of any one of such owners to sue in order to prevent a violation of said covenant.

■ The evidence shows and the court found that appellee Boney owned a portion of Block 3 of Cavitt's Woodland Heights Addition No. 2, and that two residences have been erected thereon, and that Slaughter owns a lot in said block on which he has his residence. Appellants' lot is in Block 1, being some distance from the property of appellee, but this fact, in addition to the fact that the erection of a grocery store would not affect the sale or reduce the value of some other lots within the area, is not altogether controlling and would not give the appellants the right to violate the covenants by building and operating a grocery store when opposed by any other owner of a lot in the restricted area who purchased subsequent to the adoption of said plan. A grocery store might not be obnoxious to some of the owners while to others it might be. The same can be said about any other kind of a structure the erection of which would be in violation of the covenant. The scheme or plan was inaugurated for the mutual benefit of all and each purchaser became a party to said scheme or plan and agreed, at least impliedly, to comply with said covenant, and one owner does not have the right to violate the same without the consent of each and every other owner. We believe the following decisions control the facts of this case: Curlee v. Walker, 112 Tex. 40, 244 S.W. 497; Bethea v. Lockhart, Tex.Civ.App., 127 S.W.2d 1029; Scaling v. Sutton, Tex. Civ.App., 167 S.W.2d 275; Scanlon v. Dewhurst, Tex.Civ.App., 197 S.W.2d 518; 43 C.J.S., Injunctions, § 87, page 589; Cowherd Development Co. v. Littick, Mo.Sup., 238 S.W.2d 346; Booker v. Old Dominion Land Co., 188 Va. 143, 49 S.E.2d 314; Rombauer v. Compton Hts. Christian Church, 328 Mo. 1, 40 S.W.2d 545; Abernathy v. Adoue, Tex.Civ.App., 49 S.W.2d 476.

■ Appellants' proposition No. 5 is: "The court erred in granting the appellees equitable relief, it being shown as a matter of law that their conduct relating to the restrictive covenant is inequitable." At the time Boney made his first purchase of property in the addition he sought to have the restrictions removed but for some reason he was unsuccessful. He then subdivided the tract into lots and erected two houses thereon. There is no evidence that he ever attempted to violate said covenant or convert his property from residential to commercial without the consent of all the owners in said district. It appears after his unsuccessful attempt that he has always complied with the covenant. The court found that the covenants relating to this district had never been violated. He did erect in an unrestricted area a large store building facing on highway No. 6, in which he operates, through a tenant, a super market. He also bought a building that had already been constructed and facing highway 6, in which a cafe was being operated. His son-in-law, Marion W. Slaughter, now operates said cafe. Said cafe building is

also in an unrestricted area. The operation of the cafe and being Boney's son-in-law is about all that can be said against Slaughter. Based upon the foregoing related acts of Boney and Slaughter, together with the testimony given by Boney on cross-examination, appellants say that as a matter of law the appellees were not entitled to have them enjoined. Honorable John Barron placed Boney upon the stand for the purpose of cross-examination and the following occurred:

"Q. Mr. Boney we are not in a grocery deal or market talk, let's get to the lick log. Why are you objecting? A. Yes, I am objecting because I don't think that he has a right, I don't want to release him over there, it would not be fair if I did not get it released on my property.

"Q. You want it released on your property and because you did not get it released you are stopping Mr. Benbow on his property? A. You might say that is a fact.

"Q. That is a fact? A. Yes.

"Q. You are not interested in profiting, the one commercial matter of that property, are you? A. Which property?

"Q. Mr. Benbow's and yours? A. Profit what kind?

"Q. It would be personal all right, if stores were built on through that? A. Well I could not say 'yes' to that question.

"Q What could you say? A. I might not want too much competition on that side."

We cannot agree with appellants' contention that the evidence shows as a matter of law that appellees were not entitled to the equitable relief granted.

The appellants contend that on account of changed conditions by encroachment of industrial and commercial enterprises in the vicinity of the restricted addition, and especially to the property owned by them, it would be inequitable to force them to a compliance with the restrictive covenant. As found by the court, all lots within the restricted area were restricted to residential purposes except Lots 7 to 12, inclusive, in Block 1 of said addition. These lots were set aside for commercial or business purposes. They front on highway No. 6. The restricted area fronts on highway 6, being a main artery of travel running through the city of Bryan in a southerly direction to the city of College Station, and also front on Coulter Drive. Appellants' lot is also in the same block and faces on Coulter Drive, being about 300 feet from the unrestricted Lot No. 7 in said block. At the time appellants purchased their lot the Bryan High School football field was in process of being developed and many of the business and commercial institutions located in the vicinity were built and in operation at the time of said purchase, and we assume that some of the increase in population from 1940 to the date of trial occurred prior to appellants' purchase of said property. All of these things appellants are bound to have known and could have reasonably anticipated that further development in this area would come and that the population would increase. There is no finding and the evidence does not show that appellants' lot is unfit for residential purposes as a result of commercial and industrial encroachment. Just because it is not as desirable for residential purposes as other lots away from Coulter Drive on account of said encroachment or, as a result thereof, the lot is more valuable for commercial purposes than for residential, does not place appellants in such an equitable position, and are not sufficient grounds to permit them to begin a process or system by which the whole plan of development could easily be destroyed without the consent of all the owners of lots in said restricted area.

The judgment of the trial court is affirmed.