Theo S. PAINTER, Jr., et al., Appellants,

v.

George G. MacDONALD et al., Appellees.

No. 11567.

Court of Civil Appeals of Texas.

Austin.

April 3, 1968.

Rehearing Denied April 24, 1968.

Harry M. Whittington, Charles M. Babb, Austin, for appellants.

McGinnis, Lochridge, Kilgore, Hunter & Wilson, Robert C. McGinnis, John W. Stayton, Jr., Clark, Thomas, Harris, Denius & Winters, J. Sam Winters, Mary Joe Carroll, Austin, for appellees.

O'QUINN, Justice.

This is a suit for declaratory judgment, decided by the trial court in favor of the parties bringing the suit, on their motion for summary judgment.

In April, 1965, George G. MacDonald and Kerry G. Merritt acquired substantially all of three lots in Mira Loma Addition in the city of Austin. The original subdivision had been laid out and a plat recorded in 1938, showing 30 numbered lots. Twenty-seven of the lots had been sold and developed by the various purchasers between 1938 and 1965.

MacDonald and Merritt undertook to subdivide the lots they had acquired and establish a plat for six lots, with plans to erect a duplex residence on each of the six lots. Theo S. Painter, Jr., owner of adjoining property in the Mira Loma Addition, advised MacDonald and Merritt by letter in July, 1965, that he considered the proposed resubdivision and construction of duplexes to be in violation of certain restrictions placed on lots in the Mira Loma Addition by the original subdivider beginning in 1938.

MacDonald and Merritt filed suit in district court in October, 1965, seeking declaratory judgment holding that none of the restrictions was applicable to the three lots plaintiffs has bought. By amended pleadings filed in January, 1967, MacDonald and Merritt joined all the lot owners as "resident defendants" and also named the grantors of the three lots as "grantor defendants." In November, 1965, certain of the lot owners had intervened as defendants.

Under their amended pleadings, alternatively to their plea for declaratory judgment, MacDonald and Merritt sought rescission of their deed and return of the consideration paid, plus sums actually expended attempting to use the property, and, in several alternatives, for damages as pleaded.

The trial court rendered judgment June 20, 1967, holding that MacDonald and Merritt were "not restricted in the free use and enjoyment of their property to construct as many as two duplexes on each of the portions" owned by them of the three lots in Mira Loma Addition "which lots have been resubdivided as Lots 1, 2, 3, 4, 5 and 6 of Mira Loma Park subdivision * * * so that on the tract in its entirety as con-

veyed as many as six duplexes may be constructed."

The holding of the trial court is amplified by the following language in the judgment:

" * * * the Court was of the opinion that regardless of whether or not plaintiffs could be bound by any restriction as to use not contained in the chain of title to the property which they have purchased, the restrictions contained in the deeds to other property in Mira Loma Addition, as a matter of law, do not prohibit resubdivision or the construction of multiple family dwellings."

Appeal has been perfected by a substantial number of the lot owners, and two briefs have been filed in their behalf. Separate briefs have also been filed for the "grantor defendants" and for MacDonald and Merritt, aligned as appellees in this Court.

We reverse the judgment of the trial court, and remand the cause for trial on the merits.

The record is clear, and none of the parties contends otherwise, that all of the lots in Mira Loma Addition were restricted to use for residential purposes. Hallie Bremond Houston, who, joined by her husband, H. M. Houston, was the original subdivider, acquired the property which she later subdivided from Enfield Realty and Home Building Company by deed dated June 15, 1925.

In the deed to Mrs. Houston the property was described as Block No. 3 in Westfield B, a subdivision by Enfield Realty. The conveyance was "subject forever" to certain restrictions, the first being to forbid the carrying on of a "mercantile business of any kind" and providing that "all improvements to be erected on said premises shall be *built and used for residence purposes only, excepting such improvements as may be proper for use in connection with a residence.*" (Emphasis added)

The deed to Mrs. Houston further provided that the premises conveyed "shall not be subdivided into tracts of less than one acre before January 1st, 1930 * * *" By plat dated March 2, 1938, Mrs. Houston subdivided the land into 30 lots as Mira Loma Subdivision. The subdivision was bounded on the north by Indian Trail, on the east by John D. McCall Road, on the south by Windsor Road, and on the west by Keating Lane.

The plat of Mira Loma Subdivision contained no restrictions, reserved no easements for public utilities, and indicated no reservation of a lot or lots in the subdivision for any specific purpose. Vista Lane was shown to traverse the subdivision from Windsor Road northerly to Indian Trail. Two 20-foot alleys, later vacated, were shown forming a "T" connecting Vista Lane on the west with John D. McCall Road on the east and extending from that alley northerly to Indian Trail.

In the same month the plat was placed of record, in March, 1938, Mrs. Houston began selling and conveying lots in Mira Loma Subdivision by deeds containing substantially uniform restrictions to individual purchasers. One of the purchasers was her son, William B. Houston, one of the "grantor defendants" in the trial court and an appellee in this appeal.

In September, 1943, about five and one-half years after the subdivision was opened, Mrs. Houston made a gift to her children, who are appellees before this Court, of ten lots in Mira Loma Subdivision. Thereafter all remaining unsold lots were sold and conveyed either by Mrs. Houston or her children to individual purchasers by deeds containing substantially uniform restrictions.

As already noted, 27 of the 30 lots in Mira Loma Subdivision had been sold by 1965. The remaining three lots, all fronting on Windsor Road, numbered 20, 21, and 22, were held by Mrs. Houston's children who in April of that year conveyed the lots (less 10 feet on the west and 20 feet on

the north previously transferred to adjoining owners) to MacDonald and Merritt with no recitation in the deed of any restriction.

MacDonald and Merritt pleaded that in a written contract of sale, preceding the deed, the "grantor defendants," Mrs. Houston's children, agreed that: "It is understood that this above described property does not have any restrictions as to subdividing for any residential use such as duplexes."

Prior to the sale to MacDonald and Merritt, Mrs. Houston, the original subdivider, and her children had conveyed the other 27 lots, with one exception, with substantially the same restrictions.

The original purchasers from Mrs. Houston and her children were required to develop their property in compliance with restrictions reading as follows:

"All improvements to be erected on said premises shall be built for residence purposes, or for use in connection with residences; and the main residence so erected thereon shall front on John D. McCall Road; the front building line of the land hereby conveyed shall be not less than 30 feet from the property line of said premises, fronting on John D. McCall Road; and no residence, or any part thereof, and no outbuildings of any kind, shall ever be erected or placed upon the space between said building and property line."

These restrictions, with appropriate changes with reference to the street upon which the lots fronted, were placed in all deeds to the 27 lots in substantially the form quoted, except in the deed to Robert F. Jones, who purchased Lot No. 1, the largest lot in the subdivision with frontage on three streets.

Mrs. Houston and her children, in substantially all of the deeds to original purchasers, placed further restrictions and gave the property owners the right to enforce the restrictions. This provision appeared as follows:

"The grantee in this conveyance accepts the same subject to all of the foregoing restrictions and conditions, which it is agreed shall be deemed to be covenants running with the land; and the grantee, for himself, his heirs, legal representatives and assigns, shall forever faithfully observe all and each of the foregoing restrictions and conditions, whether or not they are repeated in subsequent conveyances of the above described property; and if the grantee, or any person or persons claiming under him, shall at any time violate or attempt to violate, or shall omit to perform or observe any of the foregoing restrictions or conditions, then it shall be lawful for any person owning land in said Mira Loma Addition to institute and prosecute appropriate proceedings at law or in equity against the grantee, or any person or persons claiming under him, for the wrong done or attempted, or the grantor herein, her heirs and representatives, if they deem it proper, without being, however, compelled to do so, may institute and prosecute such proceedings."

The 27 lots were sold in such manner that five parcels comprising ten lots were between Keating Lane and Vista Lane, five parcels comprising nine lots were sold on the east side of Vista Lane, and four tracts comprising eight lots were sold on the west side of McCall Road. The second deed that Mrs. Houston made after the subdivision plat was filed contained the obligation that the original subdivider, her heirs and assigns, would observe for themselves and impose upon other buyers the deed restrictions. This provision was as follows:

"In further consideration of the purchase price herein acknowledged, Grantors agree and bind themselves, their heirs and assigns, to observe for themselves and to impose upon other buyers of others lots in the Mira Loma Addition all the restrictions, covenants and conditions that

are being contained in this deed, except that where lots front on streets other than Vista Lane, the 30 foot distance of set back shall be from streets on which the lots shall front."

MacDonald and Merritt moved for summary judgment May 24, 1967, contending there was no genuine issue of fact before the trial court. In support of this motion, MacDonald and Merritt each made an affidavit stating they had no knowledge of any restrictions until they received a letter from Appellant Painter's attorney and that their grantors, Mrs. Houston's children, had not told them of any restrictions. In further support of the motion, the affidavit of William B. Houston was introduced in which he stated that he did not tell Mac-Donald and Merritt about any restrictions placed upon other purchasers of property in Mira Loma Subdivision.

In reply to the motion for summary judgment, Appellant Painter alleged there were at least three genuine issues of fact shown by the pleadings, affidavits, and evidence on file. The issues were, first, that a general plan or scheme of development was established for Mira Loma Subdivision when Mrs. Houston filed the plat and conveyed the lots by deeds containing uniform restrictions; second, the deed restrictions established by the general plan or scheme had not been violated; and, third, there had been no waiver by the owner of lots in the subdivision of the right to enforce the restrictions established by the scheme or plan.

In support of this reply, Appellant Painter filed certified copies of deeds from Mrs. Houston and her children to thirteen original purchasers of lots in the subdivision. The deeds to the original fourteen purchasers show that the subdivider and her children sold the lots in parcels containing more than one lot, except Lot 19 sold to McKay and Lot 1 sold to Jones, either of which lots is nearly twice the size of individual lots sold to the other twelve original purchasers. All of the deeds from the original subdivider and her children show

that no original purchaser acquired a site containing less than 100 feet of frontage on any of the streets in or abutting the subdivision.

Appellant Painter acquired a site originally sold by Mrs. Houston to her son, William B. Houston, as Lot 23 and all of Lot 24 except the north 20 feet. This residential site, as a result of closing the alleys, included the 20-foot alley adjoining Lot 23 and the north 20 feet of Lots 20 and 21.

The deed from Mrs. Houston's children to MacDonald and Merritt shows that the property conveyed was all of Lots 20, 21, and 22, except the west ten feet of Lot 20 and the north 20 feet of Lots 20, 21, and 22. The original plat shows Lots 20 and 21 to have 100 feet each fronting on Windsor Road and a depth of about 198 feet. MacDonald and Merritt acquired a parcel substantially consisting of three lots, having frontage of about 242 feet on Windsor Road and each lot having a depth of about 178 feet. This area contained about 45,000 square feet.

MacDonald and Merritt resubdivided the lots they bought, under a plat designated Mira Loma Park, to consist of six lots, instead of three lots. By their lawsuit Mac-Donald and Merritt sought to have the court declare that they could lawfully construct a duplex residence on each of the smaller lots, or a total of twelve living units on an area substantially comprising three lots of the original subdivision established in 1938 by Mrs. Houston.

The trial court held that as a matter of law the restrictions contained in the deeds to the original purchasers of lots in Mira Loma Subdivision, "do not prohibit resubdivision or the construction of multiple family dwellings."

Appellants contended in the trial court and now contend on appeal that the pleadings and deeds introduced in evidence show that a general plan or scheme of development was established for Mira Loma Subdivision by Mrs. Houston and her children,

**132**

and that the plan was relied upon and acted upon by the original purchasers. Appellants further contend that the general plan or scheme was a question of fact, which if established, obligated MacDonald and Merritt to develop their lots in accordance with the plan or scheme, and that the plan did not permit the construction proposed by MacDonald and Merritt.

The trial court held that even if there was a general plan or scheme for development, MacDonald and Merritt were not prevented from constructing six duplexes, or twelve living units, on portions of three lots in Mira Loma Subdivision because the deed restrictions imposed upon other original purchasers of the 27 lots first sold and developed do not prohibit resubdivision nor the construction of multiple family dwellings.

With this conclusion of the trial court we are unable to agree.

■ We think that when Mrs. Houston imposed the restriction that all improvements to be erected "on said premises" must be for residence purposes, or use in connection with residences, followed by the specific requirement that *"the main residence so erected thereon shall front"* on a designated street, the original subdivider restricted the premises conveyed to use for a single-family dwelling with accessory structures permitted.

■ Whatever the grantor said should be read to have meaning if such reading is possible. We believe that when the grantor stipulated that "the main residence" should front on a named street, she intended the phrase to have a meaning consistent with the other covenants in the deed and harmonious within itself.

The word "main" is not susceptible of a wide range of definitions. When used as an adjective, as it was used by Mrs. Houston to modify the noun residence, "main" means principal, chief, first in size, rank, importance. (Webster: New International Dictionary, 2d ed., unabr.)

The Oxford English Dictionary defines "main" as "chief or principal in permanent relation to others of the same kind or group."

Webster names "foremost, leading, prime" as synonyms of "main" when used as an adjective. The antonyms listed are "subordinate, minor, unimportant."

Without question the word "main" when used as an adjective rules out the premise of equality with the noun it modifies within the same class or group. The words "the main residence" describe a residence which in relation to its kind or class is set apart as first and foremost in importance, independent of all others in the class. Other residences in the class are necessarily subordinate.

An apt analogy is found in the rule of English composition that "the main clause" of a sentence is independent, conveying a unit of meaning complete in itself, and that a subordinate clause does not convey such complete unit of meaning and cannot stand alone as a separate sentence. Similarly, "the main residence" is one complete in itself. Mrs. Houston stipulated that, *"All improvements to be erected * * * shall be built for residence purposes, or for use in connection with residences; and the main residence so erected thereon"* shall front as prescribed. (Emphasis supplied) Any residence not "the main residence" could not equal the principal dwelling and would be subordinate, or for use only in connection with "the main residence."

A multiple dwelling, such as a duplex, is antagonistic to a covenant that limits use of property to "residence purposes, or for use in connection with residences," and prescribes a setback for "the main residence so erected thereon." Multiple dwellings under such a covenant oppose the term "the main residence" and each of the residence units vainly asserts claim to being "the main residence."

This Court in Fischer v. Reissig, 143 S.W. 2d 130 (Tex.Civ.App., Austin, writ ref.), had before it a restriction prescribing a setback for "the dwelling house" to be erected on a lot in a residential subdivision. In that case, this Court stated:

"The clause, 'the dwelling house,' is used in the singular, and the article 'the' as used before the noun 'dwelling house' was intended to be used in the sense of specifying or particularizing that only one such dwelling house should be built on each lot." 143 S.W.2d 130, 131, col. 1.

The Court cited White v. Hansen, 36 S. W.2d 456 (Tex.Comm.App.1931), in which it was held that a covenant restricting property "for private residence purposes only" contemplated that if outhouses were constructed first, "the main residence" should thereafter be erected without delay. The Court of Civil Appeals in White v. Hansen had held that the lot owner could build servant quarters and later construct "the main residence."

The Commission disapproved this holding and observed that, "Such a construction would practically nullify the restrictive covenants in the deed."

This Court in Fischer v. Reissig relied upon White v. Hansen and said:

"Applying this principle of construction to the general tenor and language of the restrictions in question, and from the testimony given, and from uniform use of the restrictions in this addition, it seems clear to us that the intention was to have a restricted residential addition with only one dwelling house on each lot." 143 S.W.2d 130, 132.

As was true in White v. Hansen, it appears in the case at bar that while more than one residence might be placed on a lot, any improvement other than "the main residence" was restricted to structures "for use in connection with residences." In White v. Hansen, business was prohibited and the property was restricted, as we have observed, "for private residence purposes only." A setback was provided by requirement that "the front line of the body of any residence which may be erected on the property" should be 35 feet from the front property line and "face the street on which the lot faces."

The Commission repeatedly referred to "the main residence" as the dwelling contemplated under the covenants, although a combination garage and "servants' quarters," with living room, bedroom, dining room, kitchen, and bath, was the structure complained of, not because it provided living quarters, but because it preceded "the main residence" with no reasonable assurance of when the latter would be built. In effect, the Commission held that it was the intention to have a restricted residential addition with only one dwelling, that being "the main residence," on each lot.

The holding of the trial court that the restrictions imposed by Mrs. Houston and her children did not expressly or otherwise prohibit resubdivision of the lots in Mira Loma Subdivision, if allowed to stand, would provide a means by which the original purchasers could circumvent the restrictions and defeat the subdivider's intention simply by resubdividing. That is precisely the device employed by MacDonald and Merritt. If they are bound by a general plan or scheme, we think that such resubdivision, and construction of multiple dwellings on the property, would violate the restrictive provisions of the deeds.

■ The decision of the Commission of Appeals in White v. Hansen was reached in 1931. It is not unreasonable to believe that Mrs. Houston, or anyone she relied upon for legal advice in making the subdivision and preparing deeds in 1938, was aware of the rule announced in that case. As was stated by the Court in Green v. Gerner, 283 S.W. 615 (Tex.Civ.App., Galveston, affirmed 289 S.W. 999, in which interpretation of deed restrictions was expressly approved by the Commission of Appeals), " * * * we prefer to follow the line of cases which give to the language used in covenants of this

kind the meaning in which it is ordinarily understood and interpreted, and upholds and enforces the contract as it was understood and intended by the parties thereto." 283 S.W. 615, 616, col. 2.

In Green v. Gerner the restriction was that "no building other than one residence with the necessary and appurtenant out buildings and improvements shall occupy the lots herein sold." The Court held that under this restriction an apartment house with eight living units if erected would violate the covenant, even though it was contended that the apartment house was for residential purposes only, was but one building, and was not obnoxious to the provision in the deed. We think the difference between an apartment house with eight units and a duplex with two units is only a matter of degree, and neither structure conforms to the restrictions Mrs. Houston and her children placed in the deeds to practically all of the purchasers of the first 27 lots sold.

■ If there was a general plan or scheme established for the development of the 30 lots in Mira Loma Subdivision by Mrs. Houston and her children and the original purchasers of 27 lots, and the variout purchasers, down to the last one or the last two, have conformed to the plan and have observed their obligations, it would not be inequitable for them to demand observance by the last two of their obligations according to the plan. Curlee v. Walker, 112 Tex. 40, 244 S.W. 497.

Entry of summary judgment in this case deprived the lot owners of a trial on the issue of general plan or scheme. The trial court in effect held that the property owners in Mira Loma Subdivision have the right to subdivide each lot they own and to build multiple residences on each lot, even though a general plan or scheme of development might have been adopted, accepted and acted upon in good faith, and consistently observed by the various purchasers.

In Green v. Gerner, supra, the Court recognized that the language of deeds alone is not the sole test for determining the existence of a general plan or scheme. In Hooper v. Lottman, 171 S.W. 270 (Tex.Civ. App. El Paso, no writ), cited with approval by the Supreme Court in Curlee v. Walker, supra, the Court stated:

"The vendor's object in imposing the restrictions must in general be gathered from all the circumstances of the case, including the nature of the restrictions." 171 S.W. 270, 272, col. 1.

The Court further pointed out that:

"If the general observance of the restriction is in fact calculated to enhance the values of the several lots offered for sale, it is an easy inference that the vendor intended the restriction for the benefit of all the lots." 171 S.W. 270, 272, col. 1.

It was proof of this nature, as well as other elements of a general plan or scheme, that the property owners were not permitted to make in the trial court. The rules for such proof, as stated in Hooper v. Lottman, are quoted at length by the Supreme Court in Curlee v. Walker, 244 S.W. 497, 498, cols. 1 and 2.

■ The issue of a general plan or scheme for development of Mira Loma Subdivision was adequately pleaded, and we think the trial court should have accorded the property owners the opportunity to make proof, if they were able to, of legally admissible facts tending to establish the general plan or scheme so pleaded. It is well settled that restrictions imposed on separate grantees of lots in a subdivision pursuant to a general plan of development or improvement may be enforced by any grantee against any other grantee on the theory of mutual covenant and consideration. Pardo v. Southampton Civic Club, 239 S.W.2d 141 (Tex.Civ.App. Galveston, writ ref.); Curlee v. Walker, supra. It is not essential in the execution of the general plan that every lot in the subdivision be impressed with the restriction. Hooper v. Lottman, supra; Green v. Gerner, 27 S.W.2d 828 (Tex.Civ.App., Austin, writ ref.).

■ The circumstances and conditions surrounding the parties and the property, as well as the manifest objects of the grant or restriction, must be considered in construing covenants or restrictions as to the use of property. Pardo v. Southampton Civic Club, supra.

We conclude that the trial court incorrectly awarded a summary judgment on motion of MacDonald and Merritt and the cause should be remanded for trial on the merits. On the record before us it appears that on trial there may be at least four issues of fact: (1) whether a general plan or scheme of development of Mira Loma Subdivision existed; (2) whether the plan or scheme has been abandoned; (3) whether the property owners have waived their right to enforce the general plan or scheme; and (4) whether the construction proposed by MacDonald and Merritt conforms to the general plan or scheme.

MacDonald and Merritt pleaded that their chain of title did not contain the restrictions found in practically all of the deeds to the first 27 lots sold by Mrs. Houston and her children and that they did not have notice of such restrictive covenants.

■ Mrs. Houston's children, who were grantors to MacDonald and Merritt, received Lots 20, 21, and 22 as a gift from their mother. These deeds did not contain the restrictions placed by Mrs. Houston and her children in deeds to nearly all of the 27 other lots in Mira Loma Subdivision. The rule, as stated by Clark, is that the burden of restrictive covenants may be enforced against grantees who take with notice or who are not purchasers for value. Clark, Real Covenants and Other Interests Which May Run with Land (1947), 183, quoted in 28 Texas Law Review, 194, 225. Mrs. Houstons' children took with notice and were not purchasers for value.

■ Notice may be either actual or constructive. American Jurisprudence states the general rule that notice of restrictions sufficient to charge a purchaser may be "no-tice sufficient to put him on inquiry." 20 Am.Jur.2d, Covenants, Conditions and Restrictions, sec. 307, p. 871. "For instance," American Jurisprudence adds, "the notice sufficient to charge a purchaser of a lot in a subdivision with knowledge of restrictions imposed in deeds to other lots as part of a general plan, but inadvertently or otherwise omitted from the deeds in his chain of title, may be actual or constructive, including notice of facts which ought to have put him on inquiry, such as the uniform appearance of the area in which the lot is located."

■ MacDonald and Merritt were put on notice as to the boundaries of Mira Loma Subdivision, the streets within the subdivision, and the number and location of all of the 30 lots in the addition. The plat was of record and was a part of their chain of title. Adams v. Rowles, 149 Tex. 52, 228 S.W.2d 849.

In their contract of purchase with Mrs. Houston's children, MacDonald and Merritt had it " * * * understood that this above described property does not have any restrictions as to subdividing for any residential use such as duplexes." The record does not reveal what prompted the placing of this provision in the contract.

■ After a subdivision is established and placed on the market, with declared intention of development as a restricted residential district and enhanced values are paid for lots on such representations, failure to include uniform restrictions in all deeds or failure in one or more deeds will not of itself take away the rights of other purchasers to have the addition maintained as a restricted residential area. Bethea v. Lockhart, 127 S.W.2d 1029 (Tex.Civ.App., San Antonio, writ ref.).

■ If there was anything in their chain of title containing anything that would put a prudent man on inquiry, MacDonald and Merritt were not only charged with notice of the contents of deeds in their chain, but were chargeable with notice of whatever an inquiry would reveal. Spencer v. Maverick,

146 S.W.2d 819 (Tex.Civ.App., San Antonio, no writ); Wilkerson v. Ward, 137 S.W. 158 (Tex.Civ.App., Austin, writ ref.).

It has been held in other jurisdictions that a purchaser in a subdivision is charged with notice of restrictions in prior deeds to other lots if such deeds were recorded and by their terms applied to all other lots in the addition. See authorities cited in 28 Texas Law Review 194, 225, fn. 132; also, 4 A.L.R.2d 1364, 1371; 16 A.L.R. 1013.

We think the issue of notice has been raised sufficiently to require disposition on retrial.

The judgment of the trial court is reversed and the cause is remanded for trial.