Ralph BURGESS et al., Appellants,

v.

Jack L. PUTNAM et al., Appellees.

No. 17177.

Court of Civil Appeals of Texas, Fort Worth.

Feb. 26, 1971.

Rehearing Denied March 26, 1971.

Coleman, Whitten & Philips, and Earl L. Coleman, Denton, for appellants.

Minor & Knight and Robert Weldon Knight, Denton, for appellees.

## OPINION

MASSEY, Chief Justice.

Jack L. Putnam and others, purchasers of what might be treated as lots within a subdivision belonging to and being promoted by Ralph Burgess, Marvin E. Ellis, and another—for an enhanced price or value in reliance upon their representations as to the general plan or scheme for the development of the subdivision—brought suit for injunction against the promoters who were also owners of the unsold land remaining in the subdivision.

Said plaintiffs obtained relief in the form of a judgment which permanently enjoined the defendants from conveying any of the remaining land owned by them in the subdivision without inclusion in any such conveyance restrictions identical with those which had been imposed upon the plaintiffs' subdivision land theretofore purchased from the defendants. The defendants appealed.

Affirmed.

Precipitating the suit was the past immediate action, and threatened future action, on the part of the defendants conveying portions of their remaining subdivision land to recent purchasers under instruments which permitted the use thereof as sites for trailer houses.

When plaintiffs purchased subdivision "lots" the defendants' plan and scheme for development prohibited the use of any land thereafter sold by them for trailer house sites. Knowledge thereof was imparted to the plaintiffs. There were no restrictions relative thereto filed in the deed or plat and dedication records of the county. Rather did the defendants adopt the method of placing in each instrument of conveyance restrictive covenants as applied to that which was sold. In other words there was nothing existent in any writing anywhere which obligated the defendants to proceed with such development of the subdivision. Instead, in so far as any written evidence appertained they were free to proceed in any way they chose, including the sale and conveyance of the remaining land for purpose of locating trailer houses thereon.

The question, therefore, is whether the representations made to plaintiffs rela-

tive to their plan of development of the entire subdivision, inducing plaintiffs to pay an enhanced price for their own conveyances which imposed restrictions upon them—including the prohibition of any use of the property purchased by them as sites for trailer houses—brought into existence their equitable right to compel the defendants to similarly restrict the use of any remaining subdivision property as a protection of plaintiffs' investment and of the lots they had purchased.

There was nothing fraudulent on the part of the defendants in their representations inducing plaintiffs' prior purchases. Their change of plan was occasioned by a diminished real estate market. Change in the market was such that permitted the defendants a ready profit if they were free to sell additional land within the subdivision as sites for trailer houses. If they adhered to their original plan for development there was a diminished likelihood of profit.

The rule of law applicable would be the same as if they had made fraudulent misrepresentations to plaintiffs, for the nonfraudulent representation was "material" relative to the purchases made by plaintiffs. See Restatement of the Law, Contracts, Sec. 479, "When Fraud or Material Misrepresentation is Presumably an Inducing Cause", and Sec. 476, "Effect of Fraud or Misrepresentation that Induces Acts Affecting Contractual Relations".

■ If there be nothing which effectively prevented the proof essential in such a case, in the form of parol evidence, the representations made by the defendants has been effectively shown. Whether as part of the consideration owing by defendants to plaintiffs or as proof that there was a general plan to keep the property restricted we have no doubt that parol evidence was proper. On the latter theory of admissibility the reception of parol evidence was specifically approved in Abernathy v. Adoue, 49 S.W.2d 476 (Beaumont Tex.Civ. App., 1932, no writ hist.). In practically all the cases it has necessarily been the opinion of the courts rendering judgments similar to that entered in this case that the reception of oral evidence was not rendered improper by the Parol Evidence Rule. Usually that would be the only method by which the necessary facts could be established. See Plaster v. Stutzman, 8 S.W.2d 750 (Galveston Tex.Civ.App., 1928, no writ hist.); Hubbard v. Ehman, 28 S.W.2d 270 (Galveston Tex.Civ.App., 1930, no writ hist.); and Wilson Co. v. Gordon, 224 S.W. 703 (Galveston Tex. Civ.App., 1920, writ dism.).

Without doubt parol evidence as to the circumstances, whether or not inclusive of the theory upon consideration, was received and considered in Hooper v. Lottman, 171 S.W. 270 (El Paso Tex.Civ.App., 1914, no writ hist.), the leading case on circumstances such as those in the case before us pursuant to Curlee v. Walker, 112 Tex. 40, 244 S.W. 497 (1922), which quoted at length therefrom with approval.

We approve the consideration given by the court below of the parol evidence offered in the instant case, and we accord such evidence probative force and effect despite the objection taken thereto; and we overrule the contention made that there was not sufficient evidence to sustain the jury verdict.

The most excellent explanation and rationalization of the law justifying the entry of the order of permanent injunction in this case is to be found in Hooper v. Lottman, supra, and we will not dwell upon it; rather refer the reader to the opinion itself.

Finally we reach the "merger clause" or "merger clauses" common to all the contracts containing restrictions on the basis of which plaintiffs assert their right to injunction compelling defendants to similarly bind all others purchasing within the subdivision. It is upon the written provisions which appear in such contracts that defendants contend that the proof established by plaintiffs' parol evidence

should be excluded and/or, if admitted, should be disregarded as the basis for any judgment. We copy therefrom, as follows:

"5. All representations, covenants and warranties and agreements between the parties are expressed in this written agreement, and no other shall be recognized between the parties unless reduced to writing and attached hereto and approved by sellers.

"* * *

"THIS CONTRACT IS MADE SUBJECT TO THE FOLLOWING RESTRICTIONS:

"* * *

"5. These covenants are to run with the land and shall be binding upon the purchaser, his heirs, executors, administrators and assigns and may be enforced by the sellers at their option either by injunction or by action for damages.

"6. Upon failure to comply with any of the above restrictions or any of the other covenants herein, at the option of sellers, the title to said property shall revert back to sellers or their assigns and all rights of purchaser or his assigns shall be forfeited. This clause however shall not affect present or subsequent mortgage holders, and may be waived at option of sellers."

In our opinion Texas law applicable to the contention of the defendants has been settled, contrary to the contentions advanced, by the case of Dallas Farm Machinery Company v. Reaves, 158 Tex. 1, 307 S.W.2d 233, 239 (1957). Though a different type of action the holding in the case would have full application to the cause presented here. Adopting the language of the Supreme Judicial Court of Massachusetts in Bates v. Southgate, 308 Mass. 170, 31 N.E.2d 551, 133 A.L.R. 1349, our own Supreme Court copied therefrom as follows:

"'As a matter of principle it is necessary to weigh the advantages of certainty in contractual relations against the harm and injustice that result from fraud. In obedience to the demands of a larger public policy the law long ago abandoned the position that a contract must be held sacred regardless of the fraud of one of the parties in procuring it. No one advocates a return to outworn conceptions. The same public policy that in general sanctions the avoidance of a promise obtained by deceit strikes down all attempts to circumvent that policy by means of contractual devices. In the realm of fact it is entirely possible for a party knowingly to agree that no representations have been made to him, while at the same time believing and relying upon representations which in fact have been made and in fact are false but for which he would not have made the agreement. To deny this possibility is to ignore the frequent instances in everyday experience where parties accept, often without critical examination, and act upon agreements containing somewhere within their four corners exculpatory clauses in one form or another, but where they do so, nevertheless, in reliance upon the honesty of supposed friends, the plausible and disarming statements of salesmen, or the customary course of business. To refuse relief would result in opening the door to a multitude of frauds and in thwarting the general policy of the law.'"

The same rules applicable in cases of fraud would likewise be applicable to a case such as the one before us where there was a non-fraudulent "misrepresentation" concerning future development, etc., of the remainder of the subdivision, inducing the plaintiffs to enter into the contracts with defendants. The evidence under attack was properly received and made the basis of jury findings upon which the judgment was rendered.

All the points of error of the defendants have been severally considered. All are overruled.

Judgment is affirmed.