Jack J. SCHULZ, Appellant,

v.

Carroll ZOELLER et al., Appellees.

No. 16010.

Court of Civil Appeals of Texas, San Antonio.

June 14, 1978.

Rehearing Denied July 12, 1978.

Shelby W. Hollin, San Antonio, for appellant.

Roger W. Wooldridge, San Antonio, for appellees.

MURRAY, Justice.

This suit was brought by appellees, Carroll Zoeller, et al., property owners in North Barcroft Estate Unit No. 1, against appellant Jack J. Schulz, to enjoin the violations of restrictive covenants in his deed. Appellees base their cause of action on allegations that appellant had violated that restrictive covenant in his deed which reads, "All buildings must be completed not later than six months after laying foundation and no structures or house trailers of any kind may be moved onto the property."

North Barcroft Estates Unit No. 1 is a 526.05 acre subdivision situated in Kendall and Comal Counties and platted into 99 tracts by the owner, Lakecroft Beach Estates, Inc. The average size of the tracts is five acres. The plat was duly recorded in the Plat Records of Kendall County, Texas, and there are no restrictions or covenants shown on the plat. There is no designation of residential or business tracts on the plat. The only restrictions and covenants pertaining to North Barcroft Estates Unit No. 1 are contained in the individual deeds from the owner to the grantees. While it is true that each deed in Unit No. 1 of a residential lot contained the same covenants and restrictions, the owner was not obligated by any written instrument to place covenants or restrictions in subsequent deeds of purchase. The owner could designate any tract in Unit No. 1 residential or business as it saw fit.

The restrictions contained in the appellees' and appellant's deeds are too lengthy to reproduce here in full. We shall therefore set forth only the material portions thereof as follows, to wit:

This conveyance is made subject to all restrictions, assessments, restrictive covenants, easements, and reservations of all rights, titles and interests in and to the surface and subsurface minerals which are of record; and is also subject to the following assessments and reservations in favor of Grantor, its successors and assigns, and to the following covenants, conditions, and restrictions adopted for the benefit of all persons who shall own property in NORTH BARCROFT ESTATES, the subdivision above described, said covenants, conditions and restrictions to be binding upon and be observed by the Grantees herein as well as Grantees, heirs, executors, administrators and assigns.

1. All tracts shall be used solely for residential purposes, except tracts designated for business purposes provided, however, no business shall be conducted on any of these tracts which is noxious or harmful by reason of the emission of odor, dust, smoke, gas fumes, noise or vibration; and provided further that the Grantor expressly reserves the right until January 1, 1975 to vary the use of any property notwithstanding the restrictions embodied in this conveyance should Grantor in its sole judgment deem it in the best interests of the property to grant such variances. The granting of any such variance by the Grantor shall be specifically stated in both the contract of sale and in the Grantor's deed conveying said tract or tracts.

2. Tracts designated as business may be used either for residential or business purposes provided, however, that if used for a business the nature and purpose of

the business use shall first be approved in writing by Grantor, its successors, assigns or designees. No tract may be subdivided unless written approval is given by the Grantor, its assignees or designees.

3. No building other than a single family residence containing not less than 900 square feet, exclusive of open porches, breezeways, carports and garages, shall be erected or constructed on any residential tract in North Barcroft Estates and no garage may be erected except simultaneously with or subsequent to erection of residence. All buildings must be completed not later than six (6) months after laying foundations and no structures or house trailers of any kind may be moved on to the property. . .

\* \* \* \* \* \*

5. No building or structure shall be erected or constructed on any tract until the building plans, specifications, plot plans and external design have first been approved in writing by the Grantor, or by such nominee or nominees as it may designate in writing.

6. No advertising or "For Sale" signs shall be erected in North Barcroft Estates without written approval of Grantor.

\* \* \* \* \* \*

11. All covenants and restrictions shall be binding upon the Grantees or their successors, heirs or assigns. Said covenants and restrictions are for the benefit of the entire property.

\* \* \* \* \* \*

16. These restrictions are to run with the land until June 1, 1995, provided, however, that the record owners of a majority of the tracts in North Barcroft Estates shall have the power through a duly recorded written instrument to extend this covenant for extensive ten (10) year periods from and after June 1, 1995.

Mr. Ed Courtney, vice president of the owner, Lakecroft Beach Estates, Inc., testified that 98 of the 99 tracts in Unit No. 1 had been sold as residential units with the identical restrictions contained in each deed.

In January of 1976, the appellant bought an old house in the city of San Antonio, Texas, and had it moved onto his lot in Unit No. 1. In February of 1976, the appellees filed suit in the district court alleging that the moving of the house onto the property was in violation of the restrictions in the subdivision and asked the court to require appellant to remove the house from his lot. After a trial before the court without a jury, judgment was entered in favor of appellees, requiring appellant to remove the house from his lot. The main issue presented by appellant is whether the evidence shows that there was a general plan or scheme for the development of Unit No. 1 as would entitle appellees to enforce the restrictions against appellant. We affirm.

■ We think the law is as stated in 26 C.J.S. *Deeds* § 167(2) (1956), page 1143, to wit:

Where the owner of a tract of land subdivides it and sells distinct parcels thereof to separate grantees, imposing restrictions on its use pursuant to a general plan of development or improvement, such restrictions may be enforced by any grantee against any other grantee, either on the theory that there is a mutuality of covenant and consideration, or on the ground that mutual negative equitable easements are created. The doctrine does not depend on whether the covenant is to be construed as running with the land.

*Curlee v. Walker*, 112 Tex. 40, 244 S.W. 497 (1922); *Green v. Gerner*, 289 S.W. 999 (Tex. Comm'n App.1927).

■ It is appellant's position that because the owner was not obligated to place restrictions in each deed of purchase, a plan or scheme for development cannot be shown. We disagree. Assuming that the owner was not obligated to develop Unit No. 1 according to a preconceived plan or scheme, if the owner did in fact develop the subdivision which resulted in a restricted residential subdivision, we hold that the restrictions may be enforced by one grantee against any other grantee.

██ We believe the case of *Green v. Gerner, supra,* is directly in point. In *Green v. Gerner,* certain grantees sued Green to restrain him from erecting an apartment house containing eight apartments in the Roseland Addition to the City of Houston in violation of a building restriction. On appeal from the trial court's granting of a temporary injunction, the commission of appeals held that a plan or scheme was not shown. Only 11 lots out of 86 lots had been sold and a large part of the subdivision was not subdivided into lots and a large portion of the subdivision was still unsold. The owner was not obligated to place restrictions in any subsequent sale. The case of *Green v. Gerner,* 27 S.W.2d 828 (Tex.Civ. App.—Austin 1930, writ ref'd), was an appeal from the same case on the merits wherein the trial court directed a verdict enjoining Green from violating building restrictions. The court held that a plan or scheme was shown in the second trial. The record in the second trial showed that the residential plan had been carried out with reference to every lot except one. In the present case, as in *Green,* the owner was not obligated to place restrictions in each subsequent deed of purchase. When all the lots of a subdivision are sold with the same or similar restrictions, a general plan or scheme is thereby adopted. In *Green,* the Austin Court of Civil Appeals said at page 829:

> The general plan of a residence district with restrictions as contained in the deeds of appellant and appellees is shown without controversy. This plan was carried out with reference to every lot in block 46 and 47, except lot 6 in block 46, the title to which still remained in Cohen. The restrictions affected every lot in these blocks fronting on Montrose boulevard. The only lots that had been sold where no restriction was shown or where the restrictions were somewhat different from those in the deeds of appellant and appellees were in the north part of block 5 and in blocks 7 and 14. All of these lots were separated some distance from blocks 46 and 47.

We have considered all other points raised by appellant, and find them to be without merit. The judgment of the trial court is affirmed.