**Larry C. NELSON, et al., Appellants,**

v.

**Edna JORDAN, Appellee.**

No. 13837.

Court of Appeals of Texas, Austin.

Dec. 14, 1983.

Rehearing Denied Jan. 4, 1984.

James M. Vogt, Coffee, Goldston & Vogt, Austin, for appellants.

Shelby A. Jordan, Corpus Christi, for appellee.

Before PHILLIPS, C.J., and EARL W. SMITH and GAMMAGE.

EARL W. SMITH, Justice.

In a suit by appellee, Edna Jordan, against appellants, Larry C. Nelson, H.E. Nelson, and Nelson Investment Company, appellee sought to permanently enjoin appellants from using a subdivision lot for any purpose other than a single-family resi-dence. After a bench trial, the court grant-ed the injunction. For convenience, appel-lants will be referred to as "Nelson" and appellee as "Jordan".

Nelson contends that the trial court erred in granting an injunction in that: (1) the written subdivision restrictions are unen-forceable as a matter of law; (2) by the great weight and preponderance of the evi-dence, Nelson had obtained an express con-sent to a change in said restrictions; and (3) that the evidence conclusively, or by the great weight and preponderance thereof, shows that Nelson had obtained consent to a change in said restrictions, by estoppel. In the fourth point of error, it is claimed that the court erred in denying Nelson at-torney's fees on his counterclaim.

Jordan, in her cross-point of error, con-tends that the trial court erred in denying her claim, as prevailing party, for mandato-ry attorney's fees.

We overrule Nelson's points of error, sus-tain Jordan's cross-point of error, reform the trial court's judgment to award Jordan attorney's fees, and as reformed, affirm the judgment of the trial court.

Jordan purchased four lots in a subdivi-sion known as Lake Bastrop Acres, Section 1, Bastrop County. She was in the process of building a home on one of the lots when Nelson, on March 10, 1981, purchased a lot adjacent to her property, for the purpose of using the lot for a multi-family residence. Nelson moved a pre-fabricated four-plex structure thereon in late December, 1981, or early January, 1982. On learning of such intended use of the Nelson lot, Jordan pro-tested unsuccessfully, and thereafter brought this suit for injunction.

The evidence shows that the subdivision, Lake Bastrop Acres, Section 1, has been subject to restrictions which have been in effect since the date of recordation of such restrictions in 1965. *Inter alia*, the restric-tions provide:

\* \* \* \* \* \*

FIRST

All lots shall be known and described as lots for residential purposes only, with

the exception of those lots specifically marked commercial on the Plat Map. *Only one single-family residence may be erected on any lot.* [emphasis added].

\* \* \* \* \* \*

FIFTEENTH

The Grantor reserves the right to change or cancel any or all of these restrictions, if in his judgment, the development or lack of development of adjacent property makes that course necessary or advisable.

\* \* \* \* \* \*

SIXTEENTH

These restrictions and covenants are hereby *declared to be covenants running with the land* and shall be fully binding upon all persons acquiring property in Lake Bastrop Acres ... and any person by the acceptance of title to any lot of this subdivision *shall thereby agree and covenant to abide by and fully perform the foregoing restrictions and covenants. These covenants are to run with the land and shall be binding for a period of twenty-five (25) years ... unless said restrictions and covenants are changed or amended by a vote of two-thirds (⅔) majority of the then owners of the lots in said subdivision* (each lot having one vote), or unless said *restrictions are changed by the Grantor, Lake Bastrop Acres, Inc., as provided in restriction number Fifteen above.* [emphasis added].

\* \* \* \* \* \*

SEVENTEENTH

If the owner of any lot in said Subdivision, or any person, shall violate any of the covenants herein, it shall be lawful for any other person or persons owning any real property situated in said Subdivision to prosecute any proceedings at law or in equity against the person ... violating or attempting to violate any such covenant and either to prevent him or them from so doing or to recov-

er damages or other dues for such violation.

\* \* \* \* \* \*

We turn to Nelson's contention that the restrictions were unenforceable as a matter of law. The thrust of such contention appears to be that the restrictions are personal to the grantor and are enforceable only by him. Nelson argues further that because the grantor in paragraph "Fifteenth" of the restrictions had retained the power to change or cancel the restrictions, such reservation made the restrictions unenforceable. We do not agree. Nelson ignores paragraph "Seventeenth" of the restrictions, which clearly gives Jordan, as owner of adjacent lots, the right of enforcement. *See* 51 A.L.R.3d 556, 611 (1973).

Nelson relies heavily on *Green v. Gerner,* 289 S.W. 999 (Tex.Comm.App.1927, holding approved) and *Curlee v. Walker,* 112 Tex. 40, 244 S.W. 497 (1922) in support of the argument that restrictive covenants are personal to the grantor and are only enforceable by him unless a common scheme of development and mutuality of covenants are shown. It should be noted that neither *Curlee* nor *Green* dealt with restrictions giving lot owners a specific right to enforce restrictions, as is true in the instant case. Even so, in *Curlee,* our Supreme Court held that owners of lots in the subdivision *could* enforce, against other purchasers, the restrictions contained in each deed in the subdivision. The Court said, at 498:

The correct rules that govern covenants of the character set out in the deeds to this restricted district are well stated by Judge Higgins in the case of *Hooper v. Lottman* (Tex.Civ.App.) 171 S.W. 270, as follows:

"The most familiar cases in which courts of equity have upheld the right of owners of land to enforce covenants to which they were not parties are those in which it has appeared that a general building scheme or plan for the development of a tract of land has been adopted, designed to make it more attractive for residential purposes by reason of certain restrictions to be im-

posed on each of the separate lots sold. This forms an inducement to each purchaser to buy, and it may be assumed that he pays an enhanced price for the property purchased. The agreement therefore enters into and becomes a part of the consideration. The buyer submits to a burden upon his own land because of the fact that a like burden imposed on his neighbor's lot will be beneficial to both lots. The covenant or agreement between the original owner and each purchaser is therefore mutual. The equity in this particular class of action is dependent as much on the existence of the general scheme of improvement or development as on the covenant, and restrictions which contemplate a general building plan for the common benefit of purchasers of lots are recognized and enforced by courts of equity at the instance of the original grantor or subsequent purchasers. So the general rule may be safely stated to be that where there is a general plan or scheme adopted by the owner of a tract, for the development and improvement of the property by which it is divided into streets and lots, and which contemplates a restriction as to the uses to which lots may be put, or the character and location of improvements thereon, to be secured by a covenant embodying the restriction to be inserted in the deeds to purchasers, and it appears from the language of the deed itself, construed in the light of the surrounding circumstances, that such covenants are intended for the benefit of all the lands, and that each purchaser is to be subject thereto, and to have the benefit thereof, and such covenants are inserted in all the deeds for lots sold in pursuance of the plan, a purchaser and his assigns may enforce the covenant against any other purchaser, and his assigns, if he has bought with actual or constructive knowledge of the scheme, and the covenant was part of the subject-matter of his purchase."

Here, the conveyance to Nelson contained recitations that the grantee took the property subject to restrictions of record. Nelson ignored the First and Sixteenth restrictions. In the latter, every purchaser of a lot in Lake Bastrop Acres specifically agrees and covenants "to abide by and fully perform the ... restrictions and covenants." The restrictions clearly show a general scheme of development for residential purposes and mutuality of covenants running with the land as to each lot in the subdivision. Nelson conceded, in argument, that prior to the Nelson purchase no lot in the subdivision had been sold for other than residential purposes and that there was a general scheme of development for residential purposes.

Texas courts have never held that mere reservation by a grantor of a power to change or cancel a restrictive covenant, in and of itself, renders the covenants unenforceable. In *Norwood v. Davis,* 345 S.W.2d 944, 948–49 (Tex.Civ.App.1961, no writ), this Court held that the power to modify restrictions could only be exercised in the exact manner provided in the dedication and that lot owners in the addition could maintain suit to enforce restrictions since the original dedication provided a right of enforcement.

A more correct statement of the law is that the reservation of power to change restrictions *along with* the absence of a common scheme or plan or its implementation is enough to destroy an equitable right of enforcement in assignees of the original grantor, when such assignees have not *expressly* been granted this right.

Other cases cited by Nelson are inapposite. In *Gray v. Lewis,* 241 S.W.2d 313 (Tex.Civ.App.1951, writ ref'd n.r.e.), there was a reservation to change clause, but no fixed plan or scheme and restrictions were in but a few deeds. In *Stewart v. Valenta,* 361 S.W.2d 910 (Tex.Civ.App.1962, writ ref'd n.r.e.), there was a reservation clause, but no dedication and no provision for right to enforce restrictions. The court in *Keith v. Seymour,* 335 S.W.2d 862, 868–69 (Tex. Civ.App.1960, writ ref'd n.r.e.) rejected an argument that the entire scheme was de-

stroyed by the grantor's reservation clause and thus was not enforceable by lot owners. The court held that the reservation clause *and* the fact that only a few lots were restricted showed the absence of a scheme allowing enforcement by other owners. We hold that the restrictions were enforceable and overrule Nelson's first point or error.

■ Nelson's second point of error is that the court erred in granting appellee an injunction enforcing the written deed restrictions since by the great weight and preponderance of the evidence appellants had obtained an express consent to a change in said restrictions. We disagree. In considering this factual insufficiency point we have considered and weighed all of the evidence, keeping in mind the rule that determining the credibility of the evidence and the weight to be given thereto is within the sole province of the trier of fact, who had the opportunity to observe the witnesses' demeanor on the stand, and that if sufficient evidence exists to support the trial court's findings, they will not be disregarded. *In re Kings Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); *Johnson v. Buck,* 540 S.W.2d 393, 411 (Tex.Civ.App.1976, writ ref'd n.r.e.).

Mary Ann Nutt, the owner of Lost Pines Title Company, testified that prior to March 10, 1981, she had talked to Tuck, president of Lake Bastrop Acres, about the restrictions. After the conversation, she wrote a letter to Larry Nelson in the early part of March, sending a copy to Tuck. She did not hear from Tuck after mailing the letter. The letter stated that Ms. Nutt had personally contacted Tuck with respect to the possible construction of a *duplex.* Tuck advised her, she said, that there was no problem—that the lot would be considered commercial. She issued a title policy on the Nelson property, *excepting the restrictions* from its coverage. She furnished a copy of the restrictions to Kay Nelson, who had contacted her in behalf of the Nelsons. She testified that when she contacted Tuck, she understood the Nelsons were going to build a duplex.

Tuck, the president of grantor, Lake Bastrop Acres, Inc., testified that he never told Ms. Nutt that the lot in question was commercial; that he never got the letter from Ms. Nutt; that he had authorized the construction of only one duplex in the subdivision—in Section 4, not Section 1 (to a Mr. Barron); that, although when asked about the building of a *duplex* he said that he had no objection, he told Barron to read the restrictions; and that it was not his intent, in either case, to change or cancel the restrictions. He said that the restrictions were recorded and "to change them would call for an amendment," and further that it was his intention that neighboring lot owners would have to give their permission. He specifically denied telling her that she was his agent "to make any assertions of fact, or any other assertions"; he testified that Ms. Nutt had never acted as his agent. He further testified that he never gave Nelson, or anyone representing him permission to construct an apartment on Lot 26 (the Nelson lot). He never told Ms. Nutt that the property was commercial.

■ Nelson requested the court to make findings of fact and conclusions of law. It did so. They have the same force and dignity as does a jury verdict on special issues, and when supported by some competent evidence they will not be disturbed on appeal, even though they appear to be against the preponderance of the evidence, unless they are so against the overwhelming weight of the evidence as clearly and manifestly to be wrong. 4 McDonald, Texas Civil Practice § 16.05, (1971).

The court found, *inter alia,* "that . . . no permission [was] obtained from the Grantor, Vernon Tuck, granting Defendants [Nelson] permission to construct the apartment complex"; that "there was no release of the restrictive covenants on Lot # 26 [the Nelson lot]"; that "restrictive covenant[s] pertaining to [the] subdivision [were] not abandoned or waived"; and that "the Deed restrictions on Lots in Section One, Lake Bastrop Acres have been on file since 1965 and the Grantor has not changed or cancelled any of the restrictions."

Here, Ms. Nutt was an interested witness. She owned the title company that handled the transaction. We have concluded that there was sufficient evidence to support the court's findings that there was no consent given by the grantor to a change of the restrictions. Nelson's second point of error is overruled.

By his third point of error, Nelson contends that the trial court erred in granting the injunction because the evidence conclusively, or by the great weight and preponderance, establishes that Nelson had obtained consent to a change in the restrictions by estoppel. In arguing that Nelson obtained, by estoppel, consent to a change in restrictions, appellant says that estoppel was proved by the action of Ms. Nutt, who appellant insists was the agent of Tuck. We hold that there was sufficient evidence to support a finding of lack of consent by estoppel.

The essential elements of equitable estoppel are the following: (1) there must have been a false representation or concealment of material fact, (2) made with knowledge of the facts, (3) to the party without knowledge or the means of knowledge of those facts, (4) with the intention that it should be acted upon and (5) the party to whom it is made must have relied to his prejudice. 22 Tex.Jur.2d, Estoppel, § 8 (1961). Appellants have not met their burden of proving elements one, three and five.

On elements one and five, there was no evidence that any statements were made by Tuck to appellants herein. Moreover, Jordan never made any statements other than complaints about the violation of restrictions by Nelson. Proof of this element is dependent on proof that Ms. Nutt was an agent of Tuck. The only evidence of agency was Ms. Nutt's testimony, developed on a Bill of Exception, that she was Tuck's agent and that he told her to make a statement in his behalf about the restrictions. The Court sustained an objection to her testimony given on the Bill. As stated earlier, Mr. Tuck specifically denied authorizing her to make any assertions in his behalf. The court in *Lennox Industries, Inc. v. Midway*

*National Bank of Grand Prarie, Texas,* 417 S.W.2d 482, 483 (Tex.Civ.App.1967, no writ) considered a similar situation in the following manner:

> [Ms. Nutt] had a right to testify as to the facts of [her] alleged agency [citations omitted] ... but we shall not consider [her] opinions and conclusions as to the extent and scope of [her] authority, which are questions of law to be determined by the court from the facts.

*See* also, *Alexander Marketing Company v. Medford* 170 S.W.2d 809, 812 (Tex.Civ.App. 1943, no writ). During the Bill of Exceptions the Court stated: "the Court is not going to say that as a matter of law there was an agent [sic] relationship at all."

Thus, the trial court found that Ms. Nutt not an agent of Tuck as a matter of law. As to whether or not appellants were given permission, through Ms. Nutt, to construct the complex by a release of restrictions by Tuck conveyed to Ms. Nutt, the trial court, in his findings of fact, found against appellant's contention, as noted above. Since the trial court's findings were supported by evidence, we are bound thereby. No agency was proved. Perforce, appellants cannot be heard to say that any statement or action by Ms. Nutt estopped Tuck or appellees to rely on the restrictions.

Nelson has failed to prove the third element of estoppel because he had the means to gain knowledge of the "facts" he was relying on. He never obtained anything in writing from Tuck and he accepted the deed with all the restrictions in it. The restrictions and procedures for releasing them were easily available and appellants took the property with notice of same. Moreover Nelson's title policy, issued by Ms. Nutt, contained an exception as to restrictions of record. "A party claiming an estoppel must have used due diligence to ascertain the truth of the matters upon which he relies ... [citations omitted]." *Barfield v. Howard M. Smith Company,* 426 S.W.2d 834, 838 (Tex.1968). The court stated further that "[t]here can be no estoppel when the party claiming the estoppel 'conducts himself with careless indifference to means

of information reasonably at hand or ignores highly suspicious circumstances which should warn him of danger or loss' [citations omitted]." *Id.* at 839. Nelson's third point is overruled.

Nelson's fourth point complains of the trial court's denial of attorney's fees under Tex.Rev.Civ.Stat.Ann. art. 2524–1, § 10 (Supp.1982). Since this judgment is not reversed, attorney's fees are denied.

■ Jordan raises a cross-point that the trial court erred in denying her attorney's fees at trial and failing to enter judgment for attorney's fees on appeal. Jordan specifically pleaded for attorney's fees under Tex.Rev.Civ.Stat.Ann. art. 1293b (1980).

This statute has been interpreted as making the award of attorney's fees mandatory in cases such as this, i.e., where the prevailing party asserted an action based on breach of a restrictive covenant. *Inwood North Homeowner's Association, Inc. v. Meier,* 625 S.W.2d 742 (Tex.Civ.App.1981, no writ). The attorneys for both sides testified that $2,500 was a reasonable fee for the trial of this case and another $2,500 would be a reasonable fee for an appeal. Appellee's first cross-point is sustained.

The judgment of the trial court is reformed so as to award Edna Jordan judgment against Larry C. Nelson, H.E. Nelson, and Nelson Investment Company for attorney's fees in the amount of $5,000. As reformed, the judgment of the trial court is affirmed.

Reformed and, as Reformed, Affirmed.