Newton v. Newman 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 



ON MOTION FOR REHEARING


 



NO. 3-90-122-CV





JAMES E. NEWTON AND JAMES E. NEWTON, INC.,




 APPELLANTS


vs.





BILLY G. NEWMAN AND AUTOMATIC COOLING, INC.,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 468,374, HONORABLE TRUMAN ROBERTS, JUDGE PRESIDING



 






 The opinion issued by this Court on January 15, 1992, is withdrawn and the
following is filed in lieu thereof.

 James E. Newton and James E. Newton, Inc. (collectively, Newton), appellants,
sued Billy Newman and Automatic Cooling, Inc. (collectively, Newman), appellees, for breach
of contract, usury, and violations of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com.
Code Ann. §§ 17.41-.63 (1987 & Supp. 1991) (DTPA). After a bench trial, the trial court
rendered a take-nothing judgment. By ten points of error, Newton complains that the trial court
erred: (1) in finding against Newton on the contract, DTPA, and usury claims; (2) in awarding
attorney's fees to Newman rather than to Newton; (3) in making its findings of fact and conclusions of law; and (4) in permitting two witnesses to testify. We will affirm in part and
reverse and render in part.



BACKGROUND


 In February 1988, Billy Newman and Jim Newton signed a written agreement
permitting Newton to open a store in Austin to sell automotive air-conditioning parts under the
name "Auto Cool." Auto Cool was the assumed name used by Newman's corporation, Automatic
Cooling, Inc., for his San Antonio business, which also sold automotive air-conditioning parts. 
The agreement bound Newton and his newly formed corporation, James E. Newton, Inc., to pay
Newman a ten thousand dollar cash down payment and six hundred dollars monthly as long as the
Austin store remained in business. The written agreement contained no other express obligations.

 After only a few months, Newton closed his store. Alleging that he had suffered
losses as a result of Newman's failure to honor the contract, Newton sent a DTPA claim letter
stating his complaint and asking for compensation. Newman declined to settle, and Newton
brought this suit. After a bench trial, the trial court rendered judgment that Newton take nothing
on any of his claims. In addition, the trial court awarded attorney's fees to Newman. Newton
perfected this appeal.



THE AGREEMENT


 By entering into the written agreement, Newton unquestionably committed himself
to pay Newman a ten thousand dollar down payment and six hundred dollars per month thereafter. 
Newton maintains that Newman verbally promised him more in return for these payments than
the written document shows. Three witnesses testified that Newman offered to provide: (1) use
of the "Auto Cool" name; (2) technical training and marketing support; (3) customer clinics; (4)
a unique price structure advantageous to Newton; (5) warehouse distributor status for Newton;
and (6) the right to fill orders from six Austin businesses which, collectively, had purchased more
than $100,000 worth of parts from Newman's store the previous year. Although Newman
admitted offering to help set up the customer clinics and to provide the pricing arrangement, he
denied that he extended Newton warehouse- distributor status or that he promised that Austin
customers would buy from Newton as a part of the agreement.



ADMISSION OF TESTIMONY


 By point of error nine, Newton asserts that the trial court abused its discretion by
allowing two of Newman's witnesses to testify despite Newman's failure properly to identify them
in answer to interrogatories. The witnesses about whose testimony Newton complains are Gregg
Henderson, one of Newton's former employees, and Lin Friesen, an AC Delco representative.

 Whether Newton has shown that Newman initially identified Henderson and Friesen
in an improper manner depends on what was required by the plain language of Newton's
interrogatory. It reads:



Please identify (as defined above) all persons whom you believe may have
knowledge of facts relevant to this lawsuit, and as to each, please give a summary
of the facts you believe may be known by such person.



In answering this interrogatory, Newman named Henderson and Friesen, described in detail their
respective relationships to the parties, and briefly summarized facts within each witness's
knowledge. Newman provided no address or telephone number for either witness; he stated that
he believed Henderson lived in Llano, but that his address was unknown.

 At trial, Newton offered and had admitted an exhibit consisting of photocopies of
Newton's interrogatories on which Newman had typed responses. However, the exhibit did not
include the definitions expressly referred to in the interrogatory.

 Newton has the burden of showing error. See Englander Co. v. Kennedy, 428
S.W.2d 806, 807 (Tex. 1968). Newton also must bring forward a record sufficient for appellate
court review and from which that court can determine reversible error. Woodruff v. Cook, 721
S.W.2d 865, 871 (Tex. App. 1986, writ ref'd n.r.e.); Evans v. State Farm Mut. Auto. Ins. Co.,
685 S.W.2d 765, 768 (Tex. App. 1985, writ ref'd n.r.e.). To demonstrate the claimed error,
Newton had to show that a deficiency in the answer rendered the trial court's admission of the
witnesses' testimony an abuse of discretion. While the record does include the interrogatory and
the answer, Newton's failure to include the definitions prevents us from determining whether
Newman was required to disclose additional information beyond the witnesses' names. 
Accordingly, the record before us does not show that Newman failed to properly identify the two
witnesses. 

 In determining what Newman was required to disclose in response to the
interrogatory, we keep in mind the provisions of Rule 166b(2)(d) of the Rules of Civil Procedure. 
That Rule allows a party to obtain "the identity and location (name, address and telephone
number) . . . of persons having knowledge of relevant facts." Tex. R. Civ. P. 166b(2)(d). The
presence of a conjunction between "identity" and "location" indicates a distinction between the
two ideas. The parenthetical strengthens that suggestion, making explicit a party's ability to
ascertain potential witnesses' addresses and telephone numbers as well as their names. 

 If Newman was asked merely to identify persons, a response listing only names was
not unreasonable. As far as we can tell from this record, the interrogatory did not seek the
locations (i.e., addresses and telephone numbers) of the persons whose names Newman supplied. 
Thus, Newton has not shown that Newman failed to comply either with the ordinary meaning of
the word "identify" or the language of Rule 166b(2)(d). We conclude, therefore, that Newton has
failed to show that the trial court abused its discretion by permitting Friesen and Henderson to
testify, impliedly finding that Newman had properly identified them in his initial response to
Newton's interrogatory. 

 The record indicates that witness Henderson contacted Newman approximately
three weeks before trial, leaving a telephone number with Newman. In his brief to this Court,
Newton implies that Newman was obligated to supplement his interrogatory answers to include
the telephone number. Newton has not shown that a duty to supplement arose. See Tex. R. Civ.
P. 166b(6). For the same reasons we have found that Newton has shown no initial improper
identification, we conclude he has not shown that Newman knew his response was incomplete
when he made it. (1) Nor has Newton shown that Newman knew the answer to be incorrect when
made. Finally, Newton has failed to show that Newman subsequently became privy to
information indicating that his initial answer was no longer true or that his failure to amend the
answer would be in substance misleading. Because Newton has shown no clear abuse of the trial
court's discretion with respect to the admission of either witness's testimony, we overrule point
of error nine.



DTPA CLAIM


 By point of error five, Newton challenges the trial court's judgment that he take
nothing on his DTPA claim. Among other complaints, he contends that he conclusively
established Newman's misrepresentations and other DTPA violations. In the alternative, he
claims that the trial court's findings of no misrepresentations and no false, deceptive, or
misleading acts or practices are against the great weight and preponderance of the evidence. We
need not address Newton's other complaints about the DTPA judgment, as we decide the point
on the evidentiary issue.

 Appellate courts review the legal and factual sufficiency of the evidence to support
a trial court's findings of fact as it would the sufficiency of the evidence to support a jury's
verdict. McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986); see also Swanson v.
Swanson, 228 S.W.2d 156, 158 (Tex. 1950) (an appellant need not have challenged the court's
findings below to be entitled to challenge the legal and factual sufficiency of the evidence to
support them on appeal). 

 In deciding Newton's "conclusively established" point, we must first determine
whether there is any evidence to support the court's finding. If there is not, we must determine
whether Newton's evidence conclusively establishes the disputed issue. See Powers & Ratliff,
Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. 515, 523 (1991). 
Therefore, to obtain a reversal of the judgment, Newton must show either that the evidence
required the trial court to find in his favor on the disputed issue as a matter of law, or that the
findings are contrary to the great weight and preponderance of the evidence. See In re King's
Estate, 244 S.W.2d 660, 661 (Tex. 1951); Nelson v. Jordan, 663 S.W.2d 82, 86 (Tex. App.
1983, writ ref'd n.r.e.). Newton has not carried this burden.

 Newton offered the testimony of three witnesses to show the representations
Newman allegedly made to induce Newton to open his Austin store. Those witnesses also
testified that they never received certain promised services and that others were of a substantially
inferior quality. Newton contends that this evidence conclusively establishes Newman's DTPA
violations. 

 Notwithstanding Newton's assertion, the record reflects evidence offered by
Newman that supports the trial court's findings. Newman himself testified that he did not promise
to provide the particular services Newton claims he was entitled to expect; instead, Newman stated
that he promised to allow Newton to use the Auto Cool name, to provide Newton with computer
programs to assist him, and to answer technical questions as they arose. Because this testimony
is some evidence supportive of the trial court's finding, we need not decide whether Newton's
evidence alone would have established a DTPA violation as a matter of law. See Powers &
Ratliff, supra, at 523. 

 As has already been described, the evidence is conflicting about what services
Newman indicated he would provide. Likewise, the testimony offered shows significant conflicts
about the parties' performance of their respective obligations under the written agreement. 
Therefore, resolution of the disputed issues depends on a determination of the witnesses'
credibility.

 In a nonjury case, the trial court assesses the credibility of the witnesses and the
weight their testimony should be given. Harris, Upham & Co. v. Ballantyne, 538 S.W.2d 153,
157 (Tex. Civ. App. 1976, no writ). We may not substitute our findings for those of the trial
court; we are not in a position to assess the witnesses' credibility. Diaz v. Cantu, 586 S.W.2d
576, 580 (Tex. Civ. App. 1979, writ ref'd n.r.e.). The trial court in the present case decided to
believe that the parties intended the agreement to include only the services Newman testified he
had promised. On this record, we cannot say that the trial court's finding is contrary to the great
weight and preponderance of the evidence simply because a larger number of witnesses testified
for Newton than for Newman. We overrule Newton's fifth point of error.



BREACH OF CONTRACT


 Newton argues that he conclusively established Newman's breach of the contract
between them. (2) In the alternative, he argues that the trial court's finding of no breach was against
the great weight and preponderance of the evidence. We do not address Newton's other
contentions, because we conclude the evidence supports the trial court's finding that Newman did
not breach the contract.

 The trial court found that Automatic Cooling, Inc., entered into written and oral
agreements with Newton and that Newman complied with all the terms and conditions of all
agreements. Therefore, on appeal Newton must show as a matter of law that Newman breached
the contract or that the finding of no breach is contrary to the great weight and preponderance of
the evidence. See In re King's Estate, 244 S.W.2d at 661; Nelson, 663 S.W.2d at 86. 

 Newton offered evidence that Newman owed him credit for returned radiators and
for excess charges he had made on certain compressors. Newton claims this evidence
conclusively establishes Newman's breach of contract. We disagree. Newman unequivocally
stated, in an answer to one of Newton's interrogatories admitted into evidence, that he had given
Newton credit for the radiators. Furthermore, Newton himself testified that he had stopped
making his monthly payments to Newman in September 1988, even though he continued doing
business with Newman until February 1989. By Newton's own admission, therefore, he owed
Newman three thousand dollars ($3,000) in unpaid monthly payments when the parties ceased
doing business in February 1989. Accordingly, even if the court had found that Newman owed
Newton an overcharge credit, the asserted amount of that credit was substantially less than the
amount that Newton owed Newman and could have been offset against that amount. Therefore,
there was a fact issue regarding Newman's alleged breach of the contract. On this record, we
cannot say that the trial court's finding was contrary to the great weight of the evidence. We
overrule Newton's sixth point of error.



USURY


 Newton next contests the trial court's conclusion that Newman was not liable for
usury with respect to the late charges applied to Newton's outstanding unpaid balances in the
months of July and August. Newton argues there is no evidence to support the finding that he
agreed to pay 1.5% interest on amounts more than thirty days past due. Newton therefore
contends he has established Newman's usury as a matter of law. In the alternative, he asserts that
the court's findings of an express agreement and an agreement formed by course of conduct are
against the great weight of the evidence.

 On two occasions Newman charged Newton interest on past due amounts at the rate
of 1.5% per month (18% per year). Newman defends against the usury claim by asserting: (1)
that Newton agreed to the imposition of the late charge; (2) that if Newman charged usurious
interest, he did so as a result of bona fide error; and (3) that Newton is prevented from recovering
on his usury claims by principles of waiver, estoppel, or accord and satisfaction. We conclude
that the trial court's judgment can be supported by its finding of waiver; accordingly, we do not
address the many other grounds on which Newman urges rejection of Newton's usury point of
error.

 In finding of fact number thirty, the trial court found that Newton waived any right
to recover "under all claims and/or causes of action in this suit." In point of error 2(b) of his
brief to this Court, Newton presents only a general challenge to the sufficiency of the evidence
to support the trial court's finding of waiver. This point of error violates Tex. R. App. P. 74 in
at least two respects. First, although the trial court's finding of waiver is contained in a single
finding of fact, it relates to three separate and distinct causes of action: breach of contract, usury,
and violation of the DTPA. Accordingly, Newton's point of error 2(b), which purports to attack
the waiver finding generally, is multifarious. See Slentz v. American Airlines, Inc., 817 S.W.2d
366, 370 (Tex. App. 1991, writ denied). In addition, only a single sentence of point of error 2(b)
-- and no citation of authority -- is devoted to waiver of the usury cause of action. As to that
cause of action, therefore, the point of error is waived. See Teague v. Bandy, 793 S.W.2d 50,
58 (Tex. App. 1990, writ denied); see generally David M. Gunn, Unsupported Points of Error
on Appeal, 32 S. Tex. L. Rev. 105 (1990).

 Even if Newton had properly challenged the finding, however, we would conclude
that the record contains sufficient evidence to support it. Waiver is an intentional relinquishment
of a known right or intentional conduct inconsistent with claiming that right. Sun Exploration &
Prod. Co. v. Benton, 728 S.W.2d 35, 37 (Tex. 1987). No "agreement" between the parties is
required. United States Fidelity & Guar. Co. v. Bimco Iron & Metal Corp., 464 S.W.2d 353,
358 (Tex. 1971). With respect to usury, Texas courts have held that the obligor of a usurious
debt may waive his usury claim by voluntarily paying the indebtedness in full. Vordenbaum v.
Rubin, 611 S.W.2d 463, 465 (Tex. Civ. App. 1980, writ ref'd n.r.e.); John Hancock Mut. Life
Ins. Co. v. Harrison, 82 S.W.2d 1075, 1077 (Tex. Civ. App. 1935, writ dism'd). This also
appears to be the general rule in other jurisdictions. See 47 C.J.S. Interest & Usury § 208 (1982). 
Waiver is ordinarily a question of fact, especially where, as here, it is a matter of inference. Ford
v. Culbertson, 308 S.W.2d 855, 865 (Tex. 1958).

 In the present case, Newton himself testified that although he initially complained
to Newman that the late charge was "illegal," he nonetheless paid the debt in full both times
Newman imposed a late charge. Although Newton testified that he paid the debt under duress
because he was afraid Newman would "cut off" his supplies, the trial court was entitled to reject
that explanation and conclude the payment was voluntary.

 These facts constitute more than a scintilla of evidence that Newton waived his
usury claim. Therefore, even if Newton had properly challenged the trial court's waiver finding
as to the usury cause of action, on this record we could not conclude that, as to that claim, the
finding of waiver is unsupported by any evidence or is contrary to the great weight and
preponderance of the evidence. We overrule Newton's fourth point of error.



ATTORNEY'S FEES


 In point of error one, Newton challenges the trial court's award of attorney's fees
to Newman, alleging that the court had no statutory or contractual basis for the award and that
Newton, rather than Newman, should have recovered his attorney's fees. In defense of the trial
court's judgment, Newman advances three bases to support the attorney's fees award: (1) section
38.001(8) of the Civil Practice and Remedies Code; (2) section 17.50(c) of the Business and
Commerce Code; and (3) the trial court's equitable powers. Newman's reliance on these sources
is misplaced. 

 Regarding the "equitable-power" argument, the general rule is that a trial court may
not award attorney's fees to either party in the absence of an agreement between the parties or a
statute authorizing the award. First City Bank v. Guex, 677 S.W.2d 25, 30 (Tex. 1984); Knebel
v. Capital Nat'l Bank, 518 S.W.2d 795, 804 (Tex. 1974). Newman directs our attention to cases
standing for the proposition that certain situations will occasionally present such overriding
considerations that a court may award attorney's fees despite the general rule. See, e.g., Hall v.
Cole, 412 U.S. 1, 4-5 (1973); Mills v. Electric Auto-Lite Co., 396 U.S. 375, 392 (1970); Knebel,
518 S.W.2d 795. Although the Knebel court recognized an equitable power to award fees, it held
such an award to be proper only when it accomplishes the equitable objective of "distributing the
burden of [the fees] among those who share in an accomplished benefit." Knebel, 518 S.W.2d
at 799.

 Any benefit resulting from the disposition of the present case accrues only to
Newman. Newman points to no other "overriding considerations" to justify the court's award. 
He has not cited, nor have we found, any cases authorizing a trial court to award attorney's fees
on general equitable grounds, in derogation of the general rule, when such overriding
considerations are absent. Therefore, we decline to affirm the attorney's-fee award on an
equitable-power basis.

 Newman next argues that the Civil Practice and Remedies Code entitles him to
attorney's fees as the prevailing party in a suit on an oral or written contract:



A person may recover reasonable attorney's fees from an individual or corporation,
in addition to the amount of a valid claim and costs, if the claim is for:


. . . 


(8) an oral or written contract.



Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (1986). Newman contends the counter claim he
brought in response to Newton's contract cause of action entitled him to recover his attorney's
fees once the court had rendered a take-nothing judgment on that claim. We disagree.

 Section 38.001(8) permits recovery of reasonable attorney's fees "in addition to the
amount of a valid claim." We construe this to mean that a party must prevail on a "valid claim"
for breach of contract before he may recover his attorney's fees. See North American Corp. v.
Allen, 636 S.W.2d 797, 800 (Tex. App. 1982, no writ). Newman's "counter claim" asserted only
that Newton's DTPA claim had been brought in bad faith and that Newman was entitled to
recover his attorney's fees under section 38.001(8). Newman alleged no independent contract
claim against Newton. Accordingly, we decline to affirm the attorney's-fee award on that basis.

 Newman's third theory to support his attorney's-fee award is that Newton's DTPA
claim either was groundless and brought in bad faith or, in the alternative, was brought solely to
harass Newman. DTPA § 17.50(c). Newman first argues that, because the trial court found no
DTPA violation, the claim was groundless and brought in bad faith. The court's determination
that Newman did not violate the DTPA does not, however, constitute a finding that a suit was
groundless, brought in bad faith, or brought solely for purposes of harassment. See Knebel v.
Port Enterprises, Inc., 760 S.W.2d 829, 832 (Tex. App. 1988, writ denied).

 Groundlessness, bad faith, and harassment determinations are matters of law for
the court. Donwerth v. Preston II Chrysler-Dodge, 775 S.W.2d 634, 637-38 (Tex. 1989). The
groundlessness test requires the court to decide whether the totality of the tendered evidence
shows an arguable basis for the consumer's claim in fact and law. Splettstosser v. Myer, 779
S.W.2d 806, 808 (Tex. 1989). Our review demonstrates an arguable basis for Newton's claim.

 Three of Newton's witnesses testified that Newman made representations in order
to induce Newton to open the Austin store, then subsequently disavowed them. This testimony
alone shows the existence of facts which, if believed, would have been sufficient in law to support
Newton's recovery of DTPA damages. Furthermore, the testimony demonstrates that Newton had
an arguable factual basis for a good faith belief that he had been the victim of deceptive practices. 
Nor has Newman shown any maliciousness or discrimination in Newton's decision to sue, or that
Newton brought his action solely for purposes of harassing Newman. Newman has, therefore,
failed to show that the award of attorney's fees was properly founded on section 17.50(c) of the
DTPA. We sustain Newton's first point of error.

 Because the trial court properly found no contractual breach or DTPA violations,
it correctly refused to award attorney's fees to Newton on those claims. We overrule Newton's
eighth point.



FINDINGS AND CONCLUSIONS


 In his tenth point, Newton complains that the trial court abused its discretion by
signing and filing its findings of fact and conclusions of law as it did. We will overrule the point.

 Rule 298 of the Rules of Civil Procedure requires that a trial court "shall file any
additional or amended findings and conclusions that are appropriate . . . . No findings or
conclusions shall be deemed or presumed by any failure of the court to make any additional
findings or conclusions." Tex. R. Civ. P. 298. We conclude that the trial court in the present
case was not obligated to amend or add to its findings or conclusions as Newton requested.

 Newton does not argue that the court committed error by allowing Newman to draft
findings and conclusions to support the judgment. He recognizes that a trial judge need not file
additional findings that are either in conflict with the existing findings or are unnecessary to the
judgment. He argues, however, that a trial court could conceivably evade its duty to file amended
or additional findings and conclusions by: (1) signing and filing, without scrutiny, whatever the
prevailing party has drafted, and (2) then ignoring the losing party's request for additional or
amended findings. Newton contends that this is, in fact, what occurred in the present case. 

 We may not presume that a court has engaged in such a practice merely because
it has declined to amend or supplement its findings as requested by the losing party. Newton
nonetheless asks us to indulge in just such a presumption by seeking a reversal of the judgment
here without producing any evidence that the trial court in fact attempted to evade its duty.

 Newton requested that the court add 36 findings of fact and 34 conclusions of law
to the 35 findings and 20 conclusions it had already made. In the alternative, he requested the
amendment of 26 findings and 18 conclusions. Some of the proposed findings and conclusions
were unnecessary to the judgment and some conflicted with it. Because Newton has not shown
that the proposed additional or amended findings and conclusions were "appropriate," he has not
shown a violation of Rule 298. 

 Even were we to assume the court had violated the rule by failing to file additional
findings and conclusions, any error would have been harmless. A court's failure to comply with
Rule 298 does not constitute reversible error if the requested findings are either covered by or
directly contrary to the original findings the court filed. San Antonio Villa Del Sol Homeowners
Ass'n v. Miller, 761 S.W.2d 460, 463 (Tex. App. 1988, no writ); Gulf Regional Educ. Television
v. Univ. of Houston, 746 S.W.2d 803, 809 (Tex. App. 1988, writ denied). Furthermore, Newton
failed to show that the proposed additional findings and conclusions would have required a
different judgment. See Shelby Int'l, Inc. v. Wiener, 563 S.W.2d 324, 328 (Tex. Civ. App. 1978,
no writ). Consequently, we conclude that the trial court did not abuse its discretion by failing to
amend or supplement its findings and conclusions. For the same reasons, we find no reversible
error in the court's failure to respond to Newton's bill of exceptions. We overrule Newton's tenth
point.



OTHER POINTS


 Newton's second point challenges the court's conclusions that Newton was
prevented from recovering on any of his claims by each of the affirmative defenses Newman
alleged. To the extent that we have not addressed these conclusions, we note that they would have
become relevant only if Newton had succeeded in his appeal. Newton's seventh point contests
the trial court's finding that Newton suffered no damages. This finding, as well, would be
relevant only if Newton had been successful in showing his right to recover under one of his
causes of action.

 We affirm that part of the judgment directing that James E. Newton and James E.
Newton, Inc. take nothing on their contract, DTPA, and usury claims and that they recover no
attorney's fees with respect to those claims. We reverse that portion of the judgment awarding
Billy G. Newman and Automatic Cooling, Inc. attorney's fees, and we render judgment denying
that request. 



 

 J. Woodfin Jones, Justice

[Before Chief Justice Carroll, Justices Jones and B. A. Smith;

 Justice Smith not participating]


Affirmed in Part; Reversed and Rendered in Part


Filed: February 19, 1992


[Do Not Publish]

1. [1] Newton's counsel objected to Henderson's testimony only on the ground that the witness
had not been "properly identified in the interrogatories, no address given, no phone numbers
given." We do not address whether that objection preserved for review the issue of Newman's
duty to supplement his response. Rather, we assume for the sake of discussion that the
objection preserved the supplementation issue for review.
2. [2] The trial court found that Newman did not do business in his individual capacity with
either of the appellants. Newton has not challenged this finding; therefore, we affirm the trial
court's take-nothing judgment in Newman's favor on the contract and usury causes of action. 
For convenience and consistency, however, we will continue to refer to appellees collectively
as "Newman."