TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-02-00230-CV







Cysco Enterprises, Inc., d/b/a Rhino Linings of Austin, Appellant


v.


Hardeman Family Joint Venture, Ltd., Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT

NO. 99-12073, HONORABLE PAUL DAVIS, JUDGE PRESIDING






 This dispute arises from an attempted sale of real estate. Appellant Cysco
Enterprises, Inc., d/b/a Rhino Linings of Austin ("Cysco") was the buyer under the contract, and
appellee Hardeman Family Joint Venture, Ltd. ("Hardeman") was the seller. The parties held
different interpretations of their obligations under the contract and of the final closing date. When
Cysco failed to respond to Hardeman's request to close by a certain date, Hardeman terminated the
contract. Cysco sued Hardeman for specific performance under the contract and for damages;
Hardeman counterclaimed for breach of contract. The dispute was submitted to a jury. The trial
court rendered judgment on the jury's verdict that Cysco take nothing and that Hardeman recover
its attorney's fees, plus court costs and post-judgment interest. By three issues on appeal, Cysco
challenges (1) the factual sufficiency of the evidence to support the judgment and (2) the trial court's
award of costs and attorney's fees to Hardeman. We overrule Cysco's issues and affirm the
judgment.


BACKGROUND


 Gregory Sellards is Cysco's chief executive officer, and Jon Glover manages its
Austin operation, Rhino Linings. In 1998, Cysco was looking for a new location to expand its Rhino
Linings business. Cysco became interested in a parcel of property that Hardeman was selling. The
property was adjacent to another piece of undeveloped property owned by Hardeman. The parties'
representatives signed a contract, and upon Cysco's deposit of $10,000 earnest money, the contract
became effective August 7, 1998. Included in the contract was the provision: "Time is of the essence
in this contract. Strict compliance with the times for performance stated in this contract is required." 
The parties set the closing date for "120 days from effective date of contract," which would have
been December 5, 1998. 

 The contract also included a special provision, which stated: "Contract contingent
upon seller installing Lamar curb cut." Hardeman had agreed to install a new curb cut (or driveway)
providing access to the property from Lamar, a street abutting the property. Installation of the curb
cut required City of Austin approval. Hardeman's representative, Bryan Hardeman, represented to
Glover that approval would not be difficult to secure, as Hardeman held a "site plan exemption" that
Bryan Hardeman assumed would apply to the proposed curb cut. Contrary to the parties'
assumptions, the City advised Bryan that the site plan exemption was not sufficient for the proposed
curb cut. 

 On September 23, 1998, Roger Duck, the listing agent and representative for
Hardeman, wrote to Glover, proposing to extend the closing date to January 5, 1999, to allow more
time to obtain the necessary City permit. The letter stated that the contractor employed by Hardeman
represented to Hardeman that a City permit could be obtained upon submission of a site plan. 
Through this letter, Duck also requested that Glover have the engineers begin preparing the site plan
and confirmed that Hardeman would pay for half of the site plan expenses. Bryan Hardeman signed
the letter, acknowledging his approval of the proposal. On October 15, Glover accepted the
proposed new closing date in writing. In his letter, Glover insisted that Bryan Hardeman sign the
engineering contract before preparation of the site plan could begin.

 On December 7, Duck wrote to Cysco's realtor, Kevin Scraggs, assuring him that
Bryan Hardeman had signed the engineering contract. In his memo, Duck reiterated the assumption
that a City permit could be obtained upon submission of a site plan and expected the real estate sale
to close within seventy-two hours after acquisition of the permit: "As soon as the site plan is
submitted and we acquire the permit and start construction on the driveway permit, Hardeman
Family Joint Venture, Ltd. will expect your client to close within 72 hours." This letter was not
signed by Bryan Hardeman, and no written response was sent by Glover.

 Unfortunately, Duck's assumption that a City permit could be obtained upon mere
submission of a site plan was mistaken. It became evident to Hardeman that approval of the site plan
was necessary to secure a City permit. Cysco and Hardeman jointly selected but separately entered
into contracts with CFX, Inc., an engineering firm, to prepare a site plan.

 After some communication and negotiations between Cysco, Hardeman, and CFX,
the parties agreed to CFX's proposal to design a joint detention pond to handle storm runoff from
both pieces of property owned by Hardeman instead of designing two separate detention ponds for
each piece of property. The plan for a joint detention pond required the parties to enter into a joint
use agreement or to record a restrictive use covenant. A site plan could not be approved without
such an agreement.

 The parties and CFX continued to work on preparing a site plan even after the January
5, 1999 closing deadline had passed. CFX requested the submission of architectural drawings of
Cysco's proposed building; the drawings were a necessary component of the site plan. Deanna
Dawson of DK Enterprises prepared the drawings, which were dated January 31, 1999, and provided
them to CFX. CFX submitted an initial site plan to the City of Austin on April 7, 1999. On May
28, CFX initiated a series of communications with Glover and Bryan Hardeman, seeking additional
information to respond to the City's concerns. On June 11, CFX informed both men that it needed
information on the restrictive covenant agreement and updated drawings from DK Enterprises. CFX
submitted an updated plan to the City on July 16, 1999, but had not yet received the requested
information from the parties. (1)

 Hardeman's attorney, John Avery, prepared a draft restrictive covenant agreement and
sent it to Vince Musat, a CFX engineer. On August 2, Musat sent the draft to Bryan Hardeman and
Glover. Glover forwarded the draft to Sellards, who forwarded the draft to his attorneys. No Cysco
representative ever responded to the draft agreement.

 On August 12, CFX again contacted the parties and again requested a restrictive
covenant agreement and updated drawings. The letter also noted that Hardeman had failed to pay
an invoice dated in March. CFX informed the parties that all work would cease until Hardeman paid
its invoice. Hardeman eventually paid the bill on August 24. The site plan was never completed or
approved.

 Subsequently, at the request of Bryan Hardeman, Avery prepared a letter dated
August 31, 1999, requesting that Cysco close the real estate transaction on September 10, 1999. No
Cysco representative responded to the letter; no one for Cysco appeared on September 10 to close
on the property. Accordingly, Bryan Hardeman sent a letter to Glover dated September 10, 1999,
informing him that the contract was terminated. The following month, the title company refunded
to Cysco the $10,000 earnest money, but Cysco returned the money to the title company.

 Cysco then sued Hardeman for breach of contract and sought specific performance. 
By its second amended petition, Cysco added a claim for mandatory injunctive relief, seeking to
enjoin Hardeman from improving the property at issue; Cysco also added claims for recovery of its
engineering fees, lost profits, and exemplary damages. Hardeman responded and filed a
counterclaim for breach of contract. The case was tried before a jury. Cysco argued that the
December 7 memo by Duck to Scraggs amended the contract and extended the closing deadline;
according to Cysco (Glover and Sellards), the parties would close the deal within seventy-two hours
after the site plan was approved and a City permit issued, whenever that might occur. During the
jury trial, Sellards tendered a check for the balance of the purchase price under the contract, and the
funds were deposited into the registry of the court. Sellards also waived the requirements that
Hardeman install a curb cut or proceed with a site plan and requested a deed to the property. The
jury found that the parties did not agree that the contract would be amended by the December 7
memo and that Hardeman was not entitled to recover any money for Cysco's failure to close the
contract. The trial court rendered a take-nothing judgment on the verdict against Cysco and awarded
costs to Hardeman along with attorney's fees in the amounts found by the jury. Cysco filed a motion
for new trial and a motion to modify, correct, or reform judgment; both were denied.


DISCUSSION

 By its first issue, Cysco challenges the factual sufficiency of the evidence to support
the verdict. Specifically, Cysco claims that the evidence presented at trial establishes that the parties
intended that the contract be amended by the memo dated December 7, 1998. When reviewing a
factual sufficiency challenge, we must assess all the evidence and may not substitute our judgment
for that of the trier of fact. Westech Eng'g, Inc. v. Clearwater Constructors, Inc., 835 S.W.2d 190,
196 (Tex. App.--Austin 1992, no writ). If, as here, the challenge is to an adverse finding, or failure
to find, on which the appellant had the burden of proof, we may reverse only if the failure to find is
so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong
and manifestly unjust. Ames v. Ames, 776 S.W.2d 154, 158 (Tex. 1989); Cropper v. Caterpillar
Tractor Co., 754 S.W.2d 646, 651 (Tex. 1988). 

 In order to prevail on its breach of contract claim, Cysco first had to prove that the
contract had been amended and the closing date extended by the December 7 memo. Cysco claims
that there is no evidence in the record that either repudiates Duck's authority to have sent the
December 7 memo on behalf of Hardeman or contradicts the fact that both Cysco and Hardeman
relied and acted upon the terms of the memo. Cysco argues that the record is replete with evidence
that both parties relied on the memo, including significant acts that occurred well beyond January
5, 1999, the prior closing date.

 Both Glover and Sellards testified that their understanding of the memo was that it
effectively extended the closing date. Both testified that they relied on this understanding of the
memo. Furthermore, both testified that they were aware that a permit could not be obtained by
merely submitting a site plan. They knew that the site plan had to be approved before they could be
granted a City permit. Thus, they believed that as of the date of the memo, December 7, it was no
longer possible to obtain site plan approval, a City permit, and begin construction of the curb cut
before the January 5 closing date.

 Cysco also points to the preparation of the detailed site plan drawings by CFX, the
engineering firm employed by both parties. The site plan drawings were not completed until
February 2, 1999, and were not submitted to the City of Austin until April 7, 1999. Furthermore,
CFX sent to both parties updates regarding the progress of the site plan submission to the City of
Austin in June, July, and August 1999. In addition, Dawson prepared and delivered architectural
compatibility drawings to CFX in February 1999 and revised those drawings pursuant to CFX's
request in June 1999. Finally, Cysco directs this Court to the preparation of a proposed restrictive
covenant agreement prepared by Hardeman's attorney in late July or early August 1999.

 On the other hand, Duck testified that the December 7 memo was never intended to
extend the closing date beyond January 5, 1999. He did not intend to wait until the site plan was
approved before closing the sale. In fact, Duck mistakenly believed that the site plan did not have
to be approved before Hardeman could obtain a City permit and begin installing the curb cut. He
believed that the closing could occur before the January 5 deadline, so long as a site plan was
prepared and submitted and a permit issued within the period between December 7, the date of the
memo, and January 5.

 Similarly, Bryan Hardeman testified that the December 7 memo was only intended
to provide Glover with the security he needed to go forward with the site plan. Glover had requested
that Hardeman sign a contract with the engineers before they proceed with the site plan, and the
December 7 memo was intended to assure Glover that a contract had been executed. Cysco had not
requested another extension, and Bryan Hardeman had not agreed to one. Bryan Hardeman testified
that he did not authorize Duck to propose an extension on the closing date to Cysco; he did not sign
the document, and the memo does not purport to be an agreement proposed by Bryan Hardeman. 
According to Bryan Hardeman, he merely asked Duck to pass on some information to Cysco's real
estate broker to let him know that Hardeman had "released the engineer to proceed forward." The
memo was simply an information memo. Bryan Hardeman also continued to believe, at the time the
memo was prepared, that Hardeman would be able to obtain a City permit upon submission of a site
plan, and would not have to wait for site plan approval. Moreover, Bryan Hardeman testified that
he never would have agreed to wait for the City's approval of the site plan to close on a real estate
transaction. Based on his experience, he knew that site plan approval could take a long time, and
he was only willing "to give 120 days, and no longer than that basically, at the time we signed the
contract." He ultimately had his attorney, Avery, prepare a letter requiring Cysco to close on the sale
by September 10, 1999 because thirteen months had passed since the contract was signed and "it
became clear to me that we . . . weren't going anywhere."

 In sum, although Glover and Sellards testified that they believed the contract had been
amended by the December 7 memo and that the closing date had been extended, Hardeman presented
evidence to the contrary. The jury as fact-finder is the sole judge of the witnesses' credibility and
the weight to be given their testimony. Simons v. City of Austin, 921 S.W.2d 524, 531 (Tex.
App.--Austin 1996, writ denied). We will not substitute our opinion for that of the jury when the
verdict is sufficiently grounded in evidence. Id. We cannot say that the jury's failure to find in favor
of Cysco is so contrary to the overwhelming weight and preponderance of the evidence as to be
clearly wrong and manifestly unjust. We hold that the evidence is factually sufficient to support a
finding that the contract was not amended by the December 7 memo and overrule Cysco's first issue.

 By its second issue, Cysco contends the trial court erred in awarding court costs to
Hardeman. Because each party prevailed in its defense to the breach of contract claim asserted by
the other party, the trial court abused its discretion in awarding the court costs solely to Hardeman
absent a finding of good cause, argues Cysco. By its third issue, Cysco argues that the trial court
erred in awarding Hardeman attorney's fees. Cysco claims that the only theory of recovery pleaded
by Hardeman for recovery of attorney's fees was in connection with the breach of contract claim. 
Cysco asserts that under section 38.001 of the civil practice and remedies code, Hardeman could not
recover attorney's fees because it did not recover any damages for its breach of contract claim. 

 Hardeman responds that the award of costs and attorney's fees was proper under the
terms of the earnest money contract. Hardeman did not specify in its pleadings that it was relying
on the civil practice and remedies code for its attorney's fees request. The contract provides in
pertinent part: 


ATTORNEY FEES: If, Buyer, Seller, Listing Broker, Other Broker, or Escrow
Agent is a prevailing party in any legal proceeding brought under or with relation to
this contract or this transaction, such party shall be entitled to recover from the non-prevailing parties all costs of such proceeding and reasonable attorney fees. 



 Attorney's fees are not recoverable unless provided for by statute or by contract
between the parties. New Amsterdam Cas. Co. v. Texas Indus., Inc., 414 S.W.2d 914, 915 (Tex.
1967). In this case, the contract between the parties provides that in the event of litigation relating
to the contract or transaction, the prevailing party shall be entitled to recover from the losing party
"all costs of such proceeding and reasonable attorney fees." Parties have a right to contract as they
see fit as long as the contract does not contravene public policy and their contracts are not illegal. 
See Benbow v. Boney, 240 S.W.2d 438, 441 (Tex. Civ. App.--Waco 1951, writ ref'd). Parties are
free to adopt a more liberal (or more strict) standard for recovery of attorney's fees in their contract
than the statute provides, and the appellate court is bound by their choice. Wayne v. A.V.A. Vending,
Inc., 52 S.W.3d 412, 417-18 (Tex. App.--Corpus Christi 2001, pet. denied); One Call Sys., Inc. v.
Houston Lighting & Power, 936 S.W.2d 673, 676 (Tex. App.--Houston [14th Dist.] 1996, writ
denied). Because the contract's provisions control, we need not consider the requirements of chapter
38 of the civil practices and remedies code. See, e.g., Twelve Oaks Tower I, Ltd. v. Premier Allergy,
Inc., 938 S.W.2d 102, 118 (Tex. App.--Houston [14th Dist.] 1996, no writ) (basing attorney's fees
on underlying contract rather than statutory requirements); One Call Sys., 936 S.W.2d at 676
(upholding award of attorney's fees in absence of other affirmative relief because parties were free
to adopt more liberal standard for recovery of attorney's fees in their contract and appellate court is
bound by their choice). The issue then is whether Hardeman was the prevailing party.

 A prevailing party is a party who successfully prosecutes the action or successfully
defends against it, prevailing on the main issue, even though not to the extent of its original
contention. Operation Rescue-Nat'l v. Planned Parenthood of Houston & Southeast Tex., Inc., 937
S.W.2d 60, 86 (Tex. App.--Houston [14th Dist.] 1996, no writ) (citing Perez v. Baker Packers, 694
S.W.2d 138, 143 (Tex. App.--Houston [14th Dist.] 1985, writ ref'd n.r.e.)), aff'd as modified, 975
S.W.2d 546 (Tex. 1998); Weng Enters. v. Embassy World Travel, Inc., 837 S.W.2d 217, 222-23
(Tex. App.--Houston [1st Dist.] 1992, no writ). Determining whether a party is the prevailing or
successful party must be based upon success on the merits, and not whether damages were awarded. 
Scholl v. Home Owners Warranty Corp., 810 S.W.2d 464, 468 (Tex. App.--San Antonio 1991, no
writ); Perez, 694 S.W.2d at 143. In other words, a prevailing party is one who is vindicated by the
trial court's judgment. Dear v. City of Irving, 902 S.W.2d 731, 739 (Tex. App.--Austin 1995, writ
denied). Allocation of costs is a matter for the trial court's discretion and cannot be overturned
absent a showing of abuse. Operation Rescue-Nat'l, 937 S.W.2d at 86.

 In this case, Cysco sued Hardeman for breach of contract and sought specific
performance; Cysco also sought mandatory injunctive relief and recovery of its engineering fees, lost
profits, and exemplary damages. By its counterclaim, Hardeman also claimed breach of contract,
alleging that Cysco's conduct in failing to deliver architectural drawings and to execute a restrictive
covenant agreement constituted anticipatory repudiation. Hardeman sought recovery for engineering
and site development fees and attorney's fees. The court's charge to the jury asked whether the
parties agreed that the earnest money contract would be amended by the December 7 memo. The
jury answered no. This answer defeated Cysco's claim for specific performance and injunctive
relief. As to these claims, Hardeman was the prevailing party. With regard to Hardeman's claim,
the jury was not asked to determine whether Cysco breached the contract. Rather, the jury was
asked, without objection, what sum of money would fairly and reasonably compensate Hardeman
for its damages that resulted from Cysco's failure to close the contract. The jury answered zero. 
Thus, the jury's verdict does not clearly establish that Hardeman failed to prevail on the merits of
its claim. Although Hardeman did not recover the damages it requested, as a result of the jury's
verdict, it also was not required to specifically perform under the contract. We hold that under these
circumstances, the trial court did not abuse its discretion in awarding costs and attorney's fees to
Hardeman as the prevailing party.


CONCLUSION

 Having overruled all of appellant's issues, we affirm the trial court's judgment.



 

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Patterson and Puryear

Affirmed

Filed: December 19, 2002

Do Not Publish
1. Dawson testified that she believed she had provided the updated drawings to CFX. She
telephoned CFX and explained that she had delivered them herself. After she made this phone call,
she assumed the matter had been taken care of. CFX, however, continued to communicate to the
parties that it had not received the updated drawings.